ELIZABETH (GOODRICH) VAN ZANT v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

Division One, July 11, 1921.

1. **NEGLIGENCE: Injury to Interstate Passenger: Free Pass: Stipulated Exemption.** The United States courts, in the trial in them of causes governed solely by the common law, follow their under-

standing of the common law, regardless of the decisions of the courts of the State in which the cause of action arose; and they have uniformly held that under the common law, irrespective of any act of Congress regulating interstate commerce, stipulations in an interstate free pass exempting a carrier from liability for personal injury to the passenger negligently inflicted, are enforceable. But under the law of this State an attempt by a common carrier, by a stipulation annexed to a free pass, to relieve itself of the consequences of its negligence, is ineffective; and where the passenger was riding on a free pass containing such a stipulation, in an interstate journey, her case, if instituted in this State, is to be determined according to the applicable local state law, unless that law has been superseded by some act of Congress regulating interstate commerce, and it has not been so superseded.

2. ——: ——: ——: ——: Hepburn Act: Anti-Pass Regulation: Member of Family. The Hepburn Act, fixing a penalty against a common carrier which issues an interstate free pass, "except to employees and their families," and a like penalty against any person who uses such pass, did not attempt to cover the field of damages for personal injuries negligently inflicted by the carrier upon a person riding on said pass, but the sole purpose of that part of the act was to prohibit the issuance of free transportation by interstate carriers. It did not prohibit the issuance of an interstate free pass obtained by a railroad employee for his mother, a member of his family, nor prevent her from recovering damages for personal injuries received by her, in this State, while riding, in an interstate journey, on said pass.

3. ——: ——: ——: ——: ——: Carmack Amendment. Neither the Hepburn Act nor the Carmack Amendment thereto superseded the law of this State that a stipulation attached to an interstate free pass will not relieve the carrier from damages for personal injuries, negligently inflicted in this State, upon the person using such free pass, in a suit brought in the courts of this State. The Carmack Amendment dealt with the carriage of property only.

Appeal from Jasper Circuit Court.—*Hon. Grant Emerson*, Judge.


AFFIRMED.

*Cyrus Crane* and *Ray Bond* for appellant.

(1)   The question for decision is whether or not the stipulations on a free interstate pass are binding and enforcible and relieve defendant from liability.   Such stipulations are controlled by Federal and not State law. Donovan v. Wells-Fargo, 265 Mo. 229; Bilby v. Ry. Co., 199 S. W. 1004; Holloway v. Railroad, 276 Mo. 500.   (2) In the particular instance the Federal legislation is sufficient to put the matter under the operation of Federal law to the exclusion of State law.   Leftridge v. Tel. Co., 277 Mo. 90, 97; Tel. Co. v. Lumber Co., 251 U. S. 27; Tel. Co. v. Boegli, 251 U. S. 315; Pryor v. Williams (recently decided by U. S. Supreme Court).   (3)   Under the decisions of the Supreme Court of the United States, the non-liability stipulations of the pass are binding and enforcible and constitute a complete defense. Charleston Ry. Co. v. Thompson, 234 U. S. 576; N. Pac. Ry. Co. v. Adams, 192 U. S. 440; Boering v. Chesapeake Ry. Co., 193 U. S. 442.   Federal cases distinguished are: Norfolk Railroad Co. v. Chatman, 244 U. S. 276; Pac. Ry. Co. v. Schuyler, 227 U. S. 601.

*F. H. Lee, Kenney & Kenney, Norman Cox* and *Hugh Dabbs* for respondent.

(1)   It is conceded by appellant, for the purposes of this appeal, that the stipulation on the back of the pass in this case, as to the assumption of risk, is void under the laws of Missouri, where the injury occurred, and under the laws of Kansas, where the pass was issued.   (2) The question of the validity of such a contract exempting from liability, and of the liability of a carrier for negligent injury to a person riding on a free pass, is not covered by nor within the matters regulated by the Hepburn Act relating to free passes and the issuing and us-

ing thereof. These questions constitute no part of the field covered by that act, nor was the regulation, control or enforcement of such liability taken over or dealt with by Congress by such enactment. In passing on such a question, even where the case is tried in the Federal court, that court does not determine the question of liability or non-liability by any provisions of the Hepburn Act, but by its own interpretation of the common law. Southern Pac. Co. v. Schuyler, 227 U. S. 610, 612; Weir v. Roundtree, 173 Fed. 779; Smith v. Ry. Co., 194 Fed. 81; Martin v. Pittsburgh Ry. Co., 203 U. S. 284; U. S. Comp. Sts. 1916 Anno., sec. 8563 (5), p. 9069; Wiley v. Grand Trunk Railroad, 227 Fed. 129; Beutler v. Grand Trunk Railroad, 224 U. S. 85; Clark v. Southern Ry. Co., 119 N. E. 539. Cases cited by analogy: Telegraph cases cited by appellant; Adams Exp. Co. v. Croninger, 226 U. S. 488, 504; Southern Pac. Ry. v. Jensen, 244 U. S. 244. (3) As to the instant case, under the decisions, federal legislation as to the carriers of passengers on a pass has not occupied the field of liability for injury to such a passenger. No attempt has been made to regulate or control this liabilty, and no mention made thereof. The same is true of contracts designed to exempt the carrier from such liability. The State court, or local forum is therefore left free to apply its local laws as to such liability. Southern Pac. Ry. Co. v. Schuyler, 227 U. S. 610-612; Clark v. Southern Ry. Co., 119 N. E. 539; Weir v. Roundtree, 173 Fed. 779; Smith v. A. T. & S. F. Co., 194 Fed. 81; Southern Pac. Ry. v. Jensen, 244 U. S. 244; Wiley v. Grand Trunk Ry., 227 Fed. 129. For illustration of the point by analogy and distinction of cases, see other cases cited under Point 2, and Fowler v. Railroad, 229 Fed. 375. The cases cited by appellant under its corresponding point are all cases dealing with the question of rates charged by telegraph companies, a subject which has been wholly taken over by Congress by express enactment. (4) Under the decisions of the United States

supreme court and the Federal courts a distinction is made as to what law is applicable in determining the question of the validity of a contract of assumption of risk in connection with a free pass, depending on the forum in which the case was tried. The courts uniformly hold that where, as here, the stipulation on the back of the pass is void under the local law where the injury occurred, and where the case is tried in the State court and comes to the Federal court on writ of error, the State or local law as to liability will prevail, and be enforced by the Federal court on the review, whereas, if the case be tried in the Federal court, either by being brought there originally or transferred thereto by the process of removal, the Federal court will apply its own interpretation of the common law as to the liability. Williams, Jurisdiction & Practice in Federal Courts, p. 193, par. 4; Southern Pac. Ry. v. Schuyler, 227 U. S. 610; Weir v. Roundtree, 173 Fed. 779; Smith v. A. T. & S. F. Ry., 194 Fed. 81; Fowler v. Railroad, 229 Fed. 374; Tweeten v. Railroad, 210 Fed. 830; Charleston Ry. Co. v. Thompson, 234 U. S. 576.

RAGLAND, C.—Action for personal injury. Plaintiff was a member of the family of her son, John Goodrich, who resided at Pittsburg, Kansas. The latter was an employee of the defendant, and on August 4, 1917, he obtained from his employer for his mother a free pass over defendant's railroad from Pittsburg, to Howe, Oklahoma. On August 9, 1917, while riding on this pass, on one of defendant's passenger trains, *enroute* from Pittsburg, Kansas, to Howe, Oklahoma, and while passing through Newton County, Missouri, plaintiff was seriously injured through the negligent management and handling of the train by defendant's employees. On the back of the pass this condition was printed: "This pass is not transferable, must be signed in ink by the holder thereof, and the person accepting and using it thereby

assumes all risk of accident and damage to person and baggage.''

The case was tried without a jury. The defendant asked the court to declare as a matter of law that the stipulation on the back of the pass was valid and binding, and that by reason thereof plaintiff was not entitled to recover. This declaration was refused; the court found for the plaintiff and assessed her damages at $8,000, the sum that had been stipulated in advance to be so assessed, in the event the finding was for the plaintiff. From the judgment rendered in accordance with the finding and assessment of damages defendant appeals.

It seems to be conceded by appellant that under the law of this State, as declared by its courts, a person travelling on a free pass granted him by the carrier is a passenger and not a trespasser or mere licensee; that such person is entitled to the same degree of care as any other passenger, and may hold the carrier liable for injuries resulting from its negligence or that of its servants; and that a condition annexed to his pass attempting to relieve the carrier of the consequences of its negligence is ineffective because against public policy. [Bryan v. Railway, 32 Mo. App. 228; Huckstep v. Railway, 166 Mo. App. 330; Young v. Railway, 93 Mo. App. 267; Lemon v. Chanslor, 68 Mo. 340; Sherman v. Railroad, 72 Mo. 62; Padgitt v. Moll, 159 Mo. 143; Powell v. Railroad, 255 Mo. 420.]

Appellant contends, however, that, as plaintiff was travelling from one State to another on an interstate free pass, issued, as it alleges, in accordance with the provisions of the Hepburn Act (U. S. Comp. Stats. 1916, p. 9069, sec. 8653, sub-div. 5), the rule of decision, with respect to the validity of stipulations in such passes exonerating the carrier from liability for negligence, followed by the United States Courts, and not that followed by the courts of this State, should be applied in determining the question of defendant's liability.

In the trial of causes governed solely by common

law in the United States courts, those courts follow their
own understanding of the common law, regardless of the
decisions of the courts of the State in which the cause of
action arose. [Beutler v. Railroad, 224 U. S. 85; Fowler
v. Railroad, 229 Fed. 374.] And the former courts have
always held that under the common law, irrespective of
any act of Congress regulating interstate commerce,
stipulations in a free pass exempting a carrier from
liability for negligence are valid and enforceable.
[Northern Pacific Railroad Co. v. Adams, 192 U. S. 440;
Boering v. Railroad, 193 U. S. 442; Wiley v. Railroad,
227 Fed. 129.] The instant case, however, having been
instituted in a state court of this State, on a cause of
action which accrued in this State, and having been tried
in such state court, is to be determined in accordance
with our applicable local state law, unless that law has
been superseded by some act of Congress in the regula-
tion of interstate commerce. [Adams Express Co. v.
Croninger, 226 U. S. 491.]

"Railroad corporations, like all other corporations
and persons, doing business within the territorial
jurisdiction of a State, are subject to its law. It is in the
law of the State, that provisions are to be found concern-
ing the rights and duties of common carriers of persons
or of goods, and the measures by which injuries resulting
from their failure to perform their obligations may be
prevented or redressed. Persons travelling on interstate
trains are as much entitled, while within a State, to the
protection of that State, as those who travel on domestic
trains. A carrier exercising his calling within a partic-
ular State, although engaged in the business of interstate
commerce, is answerable, according to the law of the
State, for acts of non-feasance or of misfeasance com-
mitted within its limits. If he fails to deliver goods to
the proper consignee at the right time and place, or if by
negligence in transportation he inflicts injury upon the
person of a passenger brought from another State, the
right of action for the consequent damage is given by

the local law.'' [Chicago, Milwaukee & St. Paul Railway Co. v. Solan, 169 U. S. 133, 137, 138.]

It is claimed by appellant that all state laws on the subject of interstate free passes, including those relating to personal injuries negligently inflicted by the carrier upon persons while being carried on such passes, were superseded, or annulled, by the Act of Congress of June 29, 1906, known as the Hepburn Act. That act provides: ''No common carrier subject to the provisions of this act, shall, after January first, nineteen hundred and seven, directly or indirectly, issue or give any interstate free ticket, free pass, or free transportation for passengers, except to its employees and their families. . . . Any common carrier violating this provision shall be deemed guilty of a misdemeanor and for each offense, on conviction, shall pay to the United States a penalty of not less than one hundred dollars nor more than two thousand dollars, and any person, other than the persons excepted in this provision, who uses any such interstate free ticket, free pass, or free transportation shall be subject to a like penalty.''

Whether the provisions just quoted of the Hepburn Act have the effect contended for must be determined in accordance with the rule announced from time to time by the Supreme Court, in slightly varying phraseology, to this effect:

''When the question is whether a Federal act overrides a State law, the entire scheme of the statute must of course be considered and that which needs must be implied is of no less force than that which is expressed. If the purpose of the act cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the State law must yield to the regulation of Congress within the sphere of its delegated power. But the intent to supersede the exercise by the State of its police power as to matters not covered by the Federal

legislation is not to be inferred from the mere fact that Congress has seen fit to circumscribe its regulation and to occupy a limited field. In other words, such intent is not to be implied unless the act of Congress fairly interpreted is in actual conflict with the law of the State." [Savage v. Jones, 225 U. S. 501, 533.]

The rule has been more tersely stated in this language: "To have the effect of superseding a State law, it is not sufficient that a Congressional regulation of commerce invades the same field; it must expressly cover the precise subject-matter, or show a purpose to take legislative possession of the whole field." [12 C. J. 18.]

The plain and obvious import of that part of the Hepburn Act under consideration is to prohibit the issuance by an interstate carrier of interstate free passes to any persons, except those of certain designated classes, and to subject both the carrier issuing such a pass and the person using it, in violation of its prohibition, to certain penalties. With respect to the issuance of passes to persons coming within the exception, nothing is said; there is no reference whatever to the form or provisions of any such pass, or to the undertaking thereby assumed by the carrier issuing it; or to the liability, if any, that may be incurred in the transportation thereunder, for a failure on the part of the carrier to exercise care, or otherwise. As evidenced by the language, the sole purpose of the enactment of these provisions was to prohibit the issuance of free transportation by interstate carriers. However, the issuance to certain classes of persons was excepted from the operation of the act. So far as the cases coming within the exception were concerned the law remained unchanged. After the passage of the act, as to the persons named in the exception, the carrier could issue free interstate passes, on such conditions, and under such stipulations, as it saw fit; or it could refuse to issue them at all, just as it could,

and did do, prior thereto. The only regulation of inter-
state free passes undertaken by the act was to *prohibit
their issuance and use*—except with respect to the per-
sons specifically excluded from its operation.

It is obvious, that if Congress, by the Hepburn Act,
has assumed the regulation of the duties (and the liability
arising from their breach) pertaining to the transporta-
tion of persons under interstate free passes, in cases
which are in terms excluded from the operation of the
anti-pass provision of the act, it must be because the
act as a whole, in its general scope and purpose, indi-
cates that Congress has chosen to occupy the entire
field of liability incident to the carriage of interstate
passengers. What duty, if any, a carrier owes a gratui-
tous passenger is but a phase of the larger question of
what duty it owes to passengers generally.

The objects sought to be attained by the original
Interstate Commerce Act of 1887 (24 U. S. Statutes at
Large, p. 279, c. 104) was to secure continuous carriage,
and just and uniform rates, and to compel the furnishing
of equal facilities. It contained no provision touching
lability for negligence on the part of the carrier in carry-
ing either persons or property. [Pennsylvania Railroad
Co. v. Hughes, 191 U. S. 477, 487, 488.] The first legisla-
tion by Congress with respect to such liability was the
Carmack Amendment to the Hepburn Act (34 U. S. Stats.
at Large, 584, 585, c. 3591), and that dealt with the carri-
age of property only. [Adams Exp. Co. v. Croninger,
supra.] The act will be searched in vain for a correl-
ative provision relating to the carriage of persons. The
anti-pass provision of the act was merely in furtherance
of the purpose of the original Interstate Commerce Act
to secure equality and prevent unjust discrimination.

Whether responsibility for personal injuries sus-
tained by interstate passengers is still subject to the
regulations of the several States does not seem to have
even been directly passed upon by the Supreme Court,

Van Zant v. Kansas City Southern Ry. Co.

but in Southern Pacific Co. v. Schuyler, 227 U. S. 601, 612, it held that the anti-pass provision of the Hepburn Act does not deprive a party who accepts gratuitous carriage in interstate commerce, in actual but unintentional violation of the prohibition of the act, of the benefit and protection of the law of the State imposing upon the carrier a duty to care for his safety.

The Supreme Court of Indiana, in passing upon the precise question under consideration here, held that the Hepburn Act and the Carmack Amendment thereto do not attempt to regulate liabilities of carriers of persons on valid free passes, and that such liabilities continue subject to state statutes. [Clark v. Railway, 119 N. E. 539.]

Our own conclusion is that Congress has not legislated on the subject of the rights and liabilities of the parties in cases of the interstate carriage of passengers under free passes, not coming within the prohibition of the Hepburn Act, or respecting the validity of stipulations or conditions annexed to such passes exempting the carrier from liability and that, therefore, these matters remain the subject of regulation by the several States.

In accordance with the views herein expressed, the judgment *nisi* should be affirmed. It is so ordered. *Small, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion of RAGLAND, C., is adopted as the opinion of the court. All of the judges concur.