MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE
v. BLACKMAN.

4-5391                                            126 S. W. 2d 285

Opinion delivered March 6, 1939.

R. E. Wiley and Richard M. Ryan, for appellant.
Glover & Glover, for appellee.

SMITH, J.  On July 18, 1937, Charlie Blackman was
a resident of Arkadelphia, Arkansas, but for five months
prior to that date had been employed by the Missouri
Pacific Railroad Company in track work—replacing old
with new ties—near Poplar Bluff, in the state of Mis-
souri.  A number of the other members of the crew with
whom he worked lived in or near Arkadelphia, and it was
his and their custom to spend the week-ends at their
homes in this state.  They were given an identification
slip which enabled them to travel on the trains of the
railroad company without payment of fare from Poplar
Bluff to their homes, and return.

On the date above mentioned Blackman and thirteen
other members of his crew were completing such a trip.

They had been to Arkadelphia, and were returning to their employment, but were not engaged in performing any service for the railroad company while doing so. The identification slip on which they were traveling reads as follows:

"Missouri Pacific Railroad Company

"Identification slip No. 24942

"When properly signed will be authority for conductors and train auditors to pass Jack Strong and 13 men from Gurdon, Ark., (a station south of Arkadelphia, where some of the crew resided) to Poplar Bluff if used on or before July 18, 1937, upon presentation, at starting point, of time pass No. B1128.

"Date: July 18, 1937

"Honored on train No. 18.

"This form must be used in accordance with instructions contained in pass circular.

"Signed: B. B. Rushing.

"Title (Illegible)."

On the reverse side of this slip the following matter was printed:

"The names of men to be carried must be shown below before boarding train:

"The name of each person to be carried is given above. Each person named is an employee of this railroad and is traveling on railroad business."

The name of Jack Strong is written on a line above the words: "Person holding pass sign here." There appears also on the reverse side of this "Identification slip" spaces for 18 names, and in 13 of these spaces names of employees were written, and in the 10th space appeared the name of Charlie Blackman.

Presumably a similar "Identification slip" had been used for the trip from Poplar Bluff to Arkadelphia. Before the completion of the return trip to Poplar Bluff Blackman received an injury which he and others testified was caused by the negligent operation of the train. Just where the accident occurred is not shown. Blackman recovered judgment for $750 to compensate his injury, and from that judgment is this appeal.

The point was raised in the motion for a new trial, but is not seriously argued in the briefs on this appeal, that the testimony was not sufficient to support the finding that the railroad company had been negligent in the operation of the train. However, upon this issue we are of opinion that the testimony was sufficient to support the finding that the railroad company had negligently operated the train, and that appellee's injury resulted from this negligence.

Reversal of the judgment is asked upon the ground that this transportation was free, and was used upon condition that the employees transported had assumed all risk of accident and injury and had released the carrier from all liability therefor. There was offered in evidence an annual pass expiring December 31, 1937, which had been issued to Rushing, the foreman, which contained this waiver of liability, but no such provision appeared on the "Identification Slip" on which Blackman traveled without payment of fare.

The train conductor read into the record the matter printed on the reverse side of the pass issued to Rushing, it being there recited that the holder of the pass "hereby assumes for said person and dependants all risk of accident and injury to person, and all damage to or loss of property, and releases the carrier from all liability therefor." The conductor was asked: "Q. When those red slips (identification slip, copied above) are presented to you, with a pass, you honor them?" and he answered: "A. Yes, sir."

We understand from this testimony that when Jack Strong, who had possession of the "identification slip," presented the slip to the conductor, he also exhibited the pass issued to Rushing, the foreman, who had issued the "identification slip." The insistence, as we understand the argument, is that this waiver of liability for a negligent injury appearing on the pass must be construed as applying also to the "identification slip," referred to by witnesses as a "group trip pass."

Assuming this to be true, the further and principal insistence for the reversal of the judgment is to this ef-

fect. Blackman was making an interstate trip. He was traveling on a free pass. The railroad company had the right, in issuing a pass for such a trip, to exempt itself from liability for a negligent injury to the pass holder. In this connection, it may be said that no contention is made that the railroad company was guilty of gross negligence or of willful or wanton conduct in the operation of the train. On the contrary, the testimony barely suffices to show any negligence to support the recovery.

For a reversal of the judgment counsel for the railroad company rely chiefly on the case of *Kansas City Southern Ry. Co.* v. *Van Zant*, 260 U. S. 459, 43 S. Ct. 176, 67 L. Ed. 348, and other cases to the same effect are cited.

In the Van Zant Case the facts were that an employee of the defendant railway company obtained from his employer a free pass for his mother over defendant's railroad, and while riding on this pass the employee's mother was injured. The pass had printed thereon the provisions that " . . . The person accepting and using it, thereby assumes all risk of accident and damage to person and baggage." The Supreme Court of Missouri held (289 Mo. 163, 232 S. W. 696), to quote a headnote in that case, that "The Hepburn act, fixing a penalty against a common carrier which issues an interstate free pass, 'except to employees and their families,' and a like penalty against any person who uses such pass, did not attempt to cover the field of damages for personal injuries negligently inflicted by the carrier upon a person riding on said pass, but the sole purpose of that part of the act was to prohibit the issuance of free transportation by interstate carriers. It did not prohibit the issuance of an interstate free pass obtained by a railroad employee for his mother, a member of his family, nor prevent her from recovering damages for personal injuries received by her, in this state, while riding, in an interstate journey, on said pass."

The Hepburn act, above referred to, as amended in numerous respects, appears in Title 49, Chapter Transportation, United States Code Annotated, pages 10, *et*

*seq.* The portion of that act relevant to the Van Zant Case and to this reads as follows: "(7) Free transportation for passengers prohibited; exceptions; penalty. No common carrier subject to the provisions of this chapter, shall, directly or indirectly, issue or give any interstate free ticket, free pass, or free transportation for passengers, .except to its employees and their families . . . ; Provided, that this provision shall not be construed to prohibit the interchange of passes for the officers, agents, and employees of common carriers, and their families . . . ; provided further, that the term 'employees,' as used in this paragraph shall include . . . ex-employees traveling for the purpose of entering the service of any such common carrier; . . ."

An appeal to the Supreme Court of the United States was prosecuted from the decision in this Van Zant Case, and that decision was reversed in an opinion appearing in 260 U. S. 459, 43 S. Ct. 176, 67 L. Ed. 348, it being held by the Supreme Court of the United States, to quote the headnotes in that case, that "1. By forbidding common carriers engaged in interstate commerce to issue free passes for interstate journeys, except to specified classes of persons (Hepburn Act, 1906) Congress took over the subject to the exclusion of state laws, not only as to what passes may be issued and used, but also as to their limitations, conditions and effect upon the rights and responsibilities of the passenger and railway company, respectively. 2. A condition affixed to a free pass, issued under the Hepburn Act, that the person accepting and using it assumes all the risk of accident and personal injury, is valid."

Subsequent to this opinion by the Supreme Court of the United States in the Van Zant Case, the question again arose in the state of Missouri, where, in the opinion in the case of *Dunn* v. *Alton Railroad Co.*, 88 S. W. 2d 224, it was said: "It is now no longer open to question but that the entire subject of free interstate transportation has been taken over by Congress to the exclusion of all state laws and policies, and that the stipulation in a

free interstate pass releasing the carrier from liability, being a part of the pass itself, is valid and enforceable.''

Upon the subject of "limitation of liability" in the transportation of interstate passengers, there appears an extended note, citing many cases, beginning at page 85 of Title 49, USCA, and the annotator makes the statement that "The state courts are required to, and, since the determination of the federal Supreme Court in the above cases, do, follow the above rule," that is, that the carrier may exempt itself from liability to the user of a free pass in interstate transportation against injury resulting from its negligence.

It was said, however, in the case of *New York Central Railroad Co.* v. *Mahoney*, 252 U. S. 152, 40 S. Ct. 287, 64 L. Ed. 502, 9 A. L. R. 496, that a stipulation on a free pass purporting to release the carrier from all liability for negligence is ineffective where injury to the passenger results from the willful and wanton negligence of the carrier's servants; but, as we have said, there is no contention here that the negligence of the railroad company in the instant case was willful or wanton or gross.

This court had held, in the case of *St. L., I. M. & So. Ry. Co.* v. *Pitcock*, 82 Ark. 441, 101 S. W. 725, 118 Am. St. Rep. 84, 12 Ann. Cas. 582, and in the case of *Memphis, D. & G. Ry. Co.* v. *Steel*, 108 Ark. 14, 156 S. W. 182, Ann. Cas. 1915B., 198, as had many other courts, that this exemption from liability was contrary to public policy, and was void for that reason. That holding, as applied to interstate transportation, must now be modified to conform to the opinions of the Supreme Court of the United States.

But it does not follow, on that account, that the judgment here appealed from must be reversed. In the first place, the "identification slip," copied above, recites that each of the persons named thereon is an employee "of this railroad and is traveling on railroad business." And in the second place there was no attempt, in this "identification slip," to exempt the railroad company from liability for injury resulting from its negligence. The railroad company had determined

that these employees were traveling on railroad business, and had not attempted to exempt itself from liability for injury to them while so traveling as authorized by the "identification slip."

The Georgia Court of Appeals, in the case of *Charleston & Western Carolina Ry. Co.* v. *Thompson,* 13 Ga. 528, 80 S. E. 1097, held, to quote a headnote in that case: "As a general rule, a stipulation in a free pass given by a carrier, to the effect that the person who accepts it assumes all risk of injury in transportation, is enforceable; and as to a passenger who has accepted transportation under such a pass a carrier is liable only for injuries resulting from wantonness or willful negligence; but an exception to this rule is presented in the provisions of the 'Hepburn Act' (Act of June 29, 1906, c. 3591, 34 Stat. 584 (U. S. Comp. St. Supp., 1911, p. 1286, 49 USCA., § 1 (7) which permits a railroad company to issue free transportation to its employees and members of their families. As between such employees and the railroad company which employs them, the privilege and benefit of being afforded transportation without cost may be regarded as a part of the consideration paid for the services of the employees, and may be treated as an element of value within the contemplation of both parties at the time of entering into the contract of employment. Consequently the court did not err in refusing to charge the jury that if the plaintiff (the wife of an employee) was traveling on a free pass, she would not be entitled to recover."

This opinion was reversed upon appeal to the Supreme Court of the United States, in an opinion by Justice Holmes. 234 U. S. 576, 34 S. Ct. 964, 58 L. Ed. 1476. The headnotes in that case read as follows:

"Under the free pass provision of the Hepburn Act of June 29, 1906, 49 USCA, § 1 (7), a free pass issued by a railroad company between interstate points to a member of the family of an employee is gratuitous and not in consideration of services of the employee.

"As a pass issued to a member of the family of an employee of a railroad company is free under the provisions of the Hepburn Act permitting it to be issued, the stipulations contained in it and on which it is ac-

cepted, including one exempting the company from liability in case of injury, are valid.

"Quaere whether under § 6 of the Act to Regulate Commerce, an interstate carrier can issue a pass in consideration of services."

At § 973 of the chapter on Carriers, 10 Am. Jur., page 38, it is said: "Accordingly, where a person agrees with a carrier to enter its employ at a certain place, and in consideration of the interests of both a free pass is given to such place, and in traveling on the carrier's road to the place of employment the person is injured by the negligence of the carrier's agents, such person must be regarded as a passenger for hire and not as an employee, and the carrier is liable for damages caused the passenger by its negligence."

In the case of *Tharp* v. *Central of Georgia Ry Co.*, 31 Ga. App. 598, 121 S. E. 592, it was held by the Court of Appeals of Georgia that an employee of a railroad company, while being carried to and from his place of work as a part of the contract of service was a servant, and not a passenger, and that his status as such was not altered by the fact that his right to travel under his contract of service was evidenced by a free pass containing a stipulation, printed thereon and assented to by him, that it had been given as a gratuity and upon the condition that the servant releases the company from all liability for injuries which may be received by him as a result of the company's negligence while using the pass. And, further, that since such an employee is not a person riding gratuitously or receiving transportation as a favor and without consideration, the company could not defend upon the ground that the employee was riding upon a free pass. It is true that in that case the employee was riding upon an intrastate pass from one point to another both in the state of Georgia; but the right of the employee to recover was not sustained on that account, but upon the ground that the employee was not being gratuitously carried. This opinion was delivered ten years after the Supreme Court of the United States, in the Charleston & Western Carolina Ry. Co. Case, *supra*, had reversed

the Georgia court, and six years after the Georgia court in the case of *Wright* v. *Central of Georgia Ry. Co.*, 18 Ga. App. 290, 89 S. E. 457, had given full recognition to the authority of this Charleston & Western Carolina Ry. Co. Case.

Here, the railroad company recognized and stated the fact to be, in the "identification slip," on which Blackman was traveling, that he was on company business at the time of his injury, and it did not attempt to advise him that he was traveling at his own risk. The "identification slip" had he read it would not have advised him such a contention would be made if he sustained an injury.

We conclude, therefore, that Blackman's right to recover damages to compensate his injury was not defeated by the fact that he paid the conductor no fare, and the judgment will be affirmed.