MEMPHIS, DALLAS & GULF RAILROAD COMPANY *v.* STEEL.

Opinion delivered April 14, 1913.

1. RAILROADS—INJURY TO PASSENGER—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.—In an action for damages for personal injuries caused by a collision between freight cars and a coach in which plaintiff

was sitting, where the brakeman testified that the collision oc-curred because the brakes which he attempted to apply would not work, although a few minutes previously they were in good order, the truth of this statement is for the jury, and where there was a verdict for the plaintiff, it can not be said, as a matter of law, that tne brakeman's statement is so reasonable, plausible and un-disputed tnat it was arbitrary on the part of the jury to disre-gard it.   (Page 20.)

2. NEGLIGENCE—INJURY TO RAILWAY PASSENGER—PROXIMATE CAUSE—DAMAGES.—In an action for damages for personal injuries, where it appears that plaintiff had suffered from tuberculosis, but had largely recovered, but after the injury, had lost weight, been con-fined to his bed for ten days, it is a question for the jury whether the injury was the proximate cause of plaintiff's condition and suffering; and under the evidence a verdict for $500.00 damages is not excessive.   (Page 21.)

3. APPEAL AND ERROR—FAILURE TO SET OUT INSTRUCTIONS IN BRIEF.—Where a number of instructions asked by appellant were refused by the trial court, but two which it asked were given, but not set out in the brief the Supreme Court will not inquire as to the correctness of any of the requested instructions which were refused.   (Page 23.)

4. RAILROADS—INJURY TO PASSENGER—PERMANENT INJURY AND FUTURE SUFFERING.—In an action for damages against a railroad company for personal injuries, where there was evidence of pain and suffer-ing following the injury. *Held,* the evidence warranted a sub-mission to the jury of the question of permanent injury and fu-ture suffering.   (Page 23.)

5. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTIONS.—Where the verdict of a jury indicates that no damages were allowed on ac-count of permanent injury and future suffering, a submission of those questions to the jury was not prejudicial.   (Page 23.)

6. CARRIERS—PASS EXEMPTING FROM LIABILITY—INVALIDITY.—A carrier can not defeat a recovery for damages by a passenger by showing the use of a pass at the time of the injury, even though the ac-ceptance of the pass was shown to be upon the condition that all claims for damages are waived.   *St. Louis, I. M. & S. Ry. Co.* v. *Pitcock,* 82 Ark. 441, cited and approved.   (Page 23.)

Appeal from Pike Circuit Court; *Jefferson T. Cow-ling,* Judge; affirmed.

*J. W. Bishop* and *Sain & Sain,* for appellant.

1.   The damages must be the natural and proximate consequence of the injury.   3 Hutch. on Car., § 1430; 70

N. E. 205; 105 U. S. 249; 7 Wall. 244; 94 U. S. A. 469; 43 N. W. 513; 74 Wis. 53; 32 Me. 946; 40 Am. St. 724.

2. Everything possible was done to prevent the injury. 69 Ark. 402; 77 *Id*. 157; 56 *Id*. 252. The want of care did not contribute to produce the injury. 78 N. W. 598; 53 Am. St. 391; 81 N. J. L. 661; 80 Atl. 495; 25 Am. & E. Ann. Cases, 525.

3. The appellee assumed the risk by accepting a free pass. 82 Ark. 441; 192 U. S. A. 44; 24 Sup. Ct. Rep. 515; 2 Hutch. on Car. 1075.

4. Appellee's instructions were erroneous, and appellant's requests should have been given. Appellant could relieve itself from responsibility by showing the injury was an accident it could not prevent. 34 Ark. 613; 33 *Id*. 816.

*Steel, Lake & Head,* for appellee.

1. Defendant was guilty of negligence. 3 Hutchinson on Carriers, §§ 1413, 1415; 89 Ark. 574.

2. Appellant did not specifically object to the instructions asked and given. 83 Ark. 61-71.

3. Appellee was a passenger. 82 Ark. 441; Hutch. on Car., § 1004.

4. The instructions were correct. 51 Ark. 459.

5. The verdict is not excessive. 88 Ark. 12.

Smith, J. The appellee began this action in the Pike County Circuit Court, alleging substantially the following facts as constituting his cause of action. That the defendant is a railroad corporation, organized under the laws of this State, owning and operating a line of railroad from Ashdown in Little River County to Murfreesboro in Pike County in said State and is a common carrier of freight and passengers for hire. That on the 5th day of December, 1911, plaintiff took passage on a mixed train from Murfreesboro to Ashdown, after having procured his necessary transportation; that he took his seat in the regular passenger coach, and when the said train reached Nashville, a station on said line, and while the same was standing on the main line, near the depot, and while the plaintiff was seated in said coach,

the engine and cars were detached from the caboose and passenger coach, and with two or three heavy loaded cars were violently, wrongfully, negligently, and with unnecessary force backed against said caboose, attached to said coach, whereby appellee was thrown forward against the seat immediately in front of him, and was permanently and seriously injured; that the said injury was caused by the straining and wrenching of the muscles of the neck, back and lungs, and the pleural cavity, the exact nature of all said injuries, he is not able to state.

That by virtue of the said injuries, he was confined to his bed for ten days and detained from his place of business for twenty days and has suffered and will continue to suffer great mental and bodily anguish; and that he will continue to lose much time by reason of the said injuries so negligently inflicted upon him by said defendant. That said injuries were permanent; and that appellee had been damaged thereby in the sum of three thousand dollars.

The appellant, in its answer, denied that the plaintiff procured the necessary transportation and became a passenger; and denied that cars were negligently and with unnecessary force backed against the caboose, attached to the coach in which appellee was a passenger; and denied that he was injured permanently or otherwise. It further denied that he had been confined to his bed or detained from his business, or that he had suffered or would continue to suffer any pain and anguish on account of his alleged injuries. Denied that his injuries were permanent; or that he had been damaged in the sum of three thousand dollars, or any other sum.

Defendant further alleged that if appellee had received any injuries upon any of its trains that he was not a passenger at the time of his injuries, but was using a gratuitous pass, which he had voluntarily accepted and signed with the following limitations and conditions endorsed thereon: "By its acceptance and use any and all claims on this company, whether due to negligence of its agents or otherwise for injury to the person or loss of,

or damage to, the property of the holder are waived and released. The holder further agrees not to use this pass in violation of any State or Federal law, and agrees to furnish proper identification whensoever requested. I accept the above conditions, and signed by appellee.'' And that by acceptance of the said gratuitous pass, appellee agreed to, and did release, appellant from any and all injuries to his person. That plaintiff's own negligence caused or contributed to his injuries if he received any; and that defendant is not liable for any alleged injuries claimed by the plaintiff, for the reason that he was at the time, and still is, suffering from tuberculosis, and should not have attempted to ride on a mixed train; and that he contributed to his own injuries in so doing.

The cause was tried before a jury and a verdict returned in favor of the plaintiff for the sum of five hundred dollars, and this appeal is prosecuted from the judgment pronounced thereon.

The evidence on the part of the appellee tended to show that he had taken passage on the local freight train at Murfreesboro for Ashdown; that the conductor looked at his pass, took its number and handed it back to him; and that the injuries occurred in front of the depot at Nashville. That the train stopped at Nashville to do some switching, but appellee remained sitting in his seat in the smoking compartment of the passenger coach; and that he had his feet resting on the seat in front of him, two seats being thrown together. The engine and all of the cars except the passenger coach and caboose were detached and taken up the road to do some switching. The caboose was immediately in front of the passenger coach, and the passenger coach was on the rear of the train. A Mr. Parks was sitting on the seat with appellee and the first they knew of any trouble was when they heard a yell and simultaneously felt the impact of the cars which had struck the caboose. Three cars which had been detached from the engine had been kicked down the track on the caboose and coach, which were standing still, striking the caboose and coach with a very great force. The appellee and Mr. Parks, who testified for him,

stated that in all their travels, which were extensive—
and that they had ridden much on mixed freight trains—
that they had never known a car to strike another with
such force. There appears to have been no real question
about the force and violence of the impact, the more
serious question being, whether or not appellant was
guilty of any negligence in allowing it to occur.

The brakeman and conductor in charge of the switch-
ing, undertook to explain the violence of the impact and
to show that they were guilty of no negligence in permit-
ting it to occur. The brakeman testified that when the
cars got within about two car-lengths of the coach and
caboose, he attempted to slow them up so they would not
make the connection very hard and make only the usual
coupling; and that when he undertook to set the brakes,
he found that they would not operate. That he used all
of his strength and energy to stop the cars with the
brakes, but that while he checked them some, he could
not do so sufficiently. His explanation being as follows:

Q. Now, then, state to the jury what you found?

A. Well, the brake-staff that runs up and down the
end of the car where the brakes attach to where it works,
the carrying iron at the bottom, and this carrying iron
sets at a certain distance from this brake right down at
the bottom of this brake-staff, and in winding this chain
around there it might only wind right on top of itself
right around, and in winding up taking up the slack the
second time there was a link caught against the carrying
iron, the piece that held the lower end of the brake-staff
in passing there was a link caught there between there
and the carrying iron that wouldn't let it pass through.
If the link had been up flat-ways it would have gone
through. If the chain had been over flat-ways it wouldn't
pass through.

The conductor discovered that something was wrong
with the approaching cars when they were about sixty
feet from him, and he ran and climbed the ladder up the
side of one of the cars, and just as he reached the brake,
the collision took place before he could set the brake.

The brakeman testified that he had had fourteen years' experience in railroading, and during all that time he had known similar trouble with the brakes to occur only twice, and he further testified that when the cars were kicked loose from the engine, he tried the brakes to see if it would work; that this was done at a distance of about 190 feet from the caboose; and that he partially applied the brake and slowed the cars down to some extent, and when he saw the brake would work, he released it, expecting to apply it again when it became necessary to do so. This is the explanation which appellant says is sufficient to excuse it from any charge of negligence. But, however that may be, its truth was a question of fact for the jury, and we can not say that the brakeman's statement is so reasonable, plausible and undisputed that it was arbitrary on the part of the jury to disregard it. *St. Louis, I. M. & S. Ry. Co.* v. *Humbert,* 101 Ark. 536; *St. Louis, I. M. & S. Ry. Co.* v. *Landers,* 67 Ark. 514. If the brake was in fact in working order when it was first tried by the brakeman, no explanation is shown of its being out of fix when he undertook to set it and stop the cars a few seconds afterward; moreover, the brakeman should certainly have known as soon as the conductor did, that the brake was not working, and no good reason is shown why he did not run to one of the other brakes and have checked the cars. In view of the fact that the conductor ran sixty feet and caught the car and climbed up the ladder, and had reached the brake at the time of the impact, it was, at least, a question of fact as to whether the brakeman might not have averted this collision by applying one of the other brakes, and should have done so. Moreover, both the brakeman and the conductor admit that it is very much safer to do this switching with the cars attached to the engine and except to save a little time, there was no reason why the engine should not have backed these three cars and attached them to the caboose. The jury was properly instructed as to the duty of the carrier in operating its train, and as to the degree of care which it owed passengers riding

upon mixed trains, and we think the evidence above stated was legally sufficient to support the finding that appellant's servants were negligent in making the switch.

The serious question in the case is whether or not appellant's negligence was the proximate cause of the appellee's suffering and illness. In the fall of 1910, appellee had been suffering with tuberculosis, and in December of that year made a trip to Arizona, where he remained for three and a half months, and prior to going to Arizona, had taken treatment at the State sanatorium for that disease. He testified that he had regained his lost weight during his absence, and was about restored to health at the time of his return from Arizona, in the latter part of April, 1911. After appellee's injury, Doctor Alford, who attended him, and who visited him first on December 7, found appellee sitting before the fire and suffering intensely in the muscles of the neck, back of the neck and shoulder, but did not remember exactly how long he suffered; that he continued to visit appellee for about a week, but thinks he treated him for two or three weeks, and that appellee suffered more or less as long as he visited him, and that his treatment was for muscular rheumatism. The record contains an interesting discussion of the pathology of tuberculosis by the physicians, who testified in the case. The theory upon which appellee tried this case was that the tubercular trouble with which he had been suffering had been arrested; that he was not suffering with the trouble at the time of the injury; that by reason of having received this injury his physical condition became worse, his system run down and necessarily his resistance became less thereby, allowing the tubercular germs, which had been arrested, to be released and begin anew their work of ravage, and the expert testimony in the record tended to sustain this theory, and to show that a man may have tuberculosis, and the disease may become arrested; that anything which tends to decrease his vitality would tend to release the tubercular germs which were dormant; and that the attack of muscular rheumatism brought on by his jar

would likely never have occurred but for this collision, for his system might, and probably would, have overcome the conditions existing. Doctor Alford, the attending physician, testified as follows:

Q. In other words, what effect does the decrease in vitality have upon a dormant tubercular germ? What tendency does it have?

A. It just simply lessens nature's protective forces and gives the germ less resisting power to act.

Q. You mean gives the body less resisting power to act?

A. Yes, and gives the germ, of course, more power to act by reason of the lower vitality of the person or the patient.

Q. In other words, then, Doctor, as I understand you, the more the vitality is lowered in a man the more the tendency is to release dormant tubercular germs?

A. Yes, sir.

Q. Now, to receive a very severe jolt or jerk or blow upon some point of the body and thereafter rheumatism develops, what, in your opinion, would be the cause of the development of that attack of rheumatism?

A. Well, a jolt or strain might aggravate the condition and bring about the attack.

Q. Then in the absence of any other cause, you would state the jolt or jar probably caused the attack to come on?

A. Not in the absence of other cause. I could not say it was caused wholly or entirely from the jolt or wrench, but I would say the condition was there and was so aggravated by this jolt or jar that the attack developed when it might not have developed, had he, at that time, not got that jar.

Following this injury, appellee lost somewhat in weight, which he had not since regained, although most of the weight he had lost after his return from Arizona was lost before his injury. Under these facts, we can not say there was no question for a jury as to appellee's suffering and condition having been proximately caused

by the injury received while a passenger on appellant's train, and if this was true, the damages recovered are not excessive.

Appellant asked a number of instructions, most of which were refused, but it appears that instructions numbered 14 and 15, which it asked were given and not set out in its brief. Under these circumstances, in accordance with a number of decisions of this court, we will not inquire as to the correctness of any of its requested instructions which were refused. *Shorter University* v. *Franklin,* 75 Ark. 571; *Files* v. *Tebbs,* 101 Ark. 207.

No serious objection is made to any of the instructions given at the request of the appellee and which announced the general principles of the law controlling here, except the instruction on the measure of damages, the objection to which was that it submitted to the jury the question of permanent injury and future suffering. We think the evidence warranted the submission of these questions to the jury, but as we have said, the amount recovered indicates that nothing was allowed on that account, and their submission was not prejudicial under the facts of this case, because the pain and suffering shown to have been endured would warrant the recovery which was had. *St. Louis, I. M. & S. Ry. Co.* v. *Hutchinson,* 101 Ark. 434; *Mo. & N. A. Rd. Co.* v. *Daniels,* 98 Ark. 363.

The remaining question relates to the use of a pass by appellee at the time of his injury. That a carrier can not defeat a recovery of damages by a passenger by showing the use of a pass at the time of injury, even though the acceptance of the pass was shown to be upon the condition that all claims for damages are waived, has been settled by this court in its decision in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Pitcock,* 82 Ark. 441.

The judgment of the court below is affirmed.