[No. 34625. Department Two. August 28, 1958.]

FORREST L. WILSON et al., *Appellants*, v. EMS W. WRIGHT et al., *Respondents*.[1]

---

[1]Reported in 329 P. (2d) 461.

*Cheney & Hutcheson, Harry Hazel, Beaulaurier & Hanson,* and *Malcolm A. McDonald,* for appellants.

*Gavin, Robinson & Kendrick,* and *Robert R. Redman,* for respondents Wright *et al.*

*Minnick & Hahner, James B. Mitchell,* and *Milton Warner,* for respondent J. D. Shotwell Company.

DONWORTH, J.—This action arises out of a nearly head-on automobile-truck collision which occurred about 5:30 p. m. May 25, 1954, on state primary highway No. 5 (the White Pass highway) at a point approximately twenty miles west of Naches, Washington.

Appellant Forrest Wilson was driving eastward in his Nash automobile, accompanied by his young daughter and coappellants herein. Respondent Ems Wright, engaged in making a delivery of lumber for his employer, respondent Young's Lumber Company, was operating the latter's 1951 Chevrolet flatbed lumber truck in the opposite direction.

Respondent Shotwell Company was engaged by the state highway department to resurface several miles of the highway at, and in either direction from, the collision scene.

Within the construction area, the posted speed limit was thirty-five miles per hour. The old pavement was pitted with innumerable depressions, or chuckholes, varying in size and shape, but the highway department permitted the road to be used for the movement of traffic in both directions.

At and near the collision site, a continuous pile of gravel ballast, ranging from about eighteen to twenty-four inches in height, lined each side of the pavement. Although the paved portion of the highway was otherwise unobstructed, traffic was confined within its width of approximately eighteen and one-half feet. The highway was dry and fairly straight, its center stripe faded, but visible.

Each driver saw the other vehicle approaching, and each was driving to his right of the center stripe. As the vehicles approached each other, the truck, driven by respondent Wright, passed over a series of chuckholes. The last one

encountered prior to the impact was approximately twenty-eight inches long, twenty-three inches wide, and from two to two and one-quarter inches deep, extending on both sides of the center line.

Upon passing over this chuckhole, the truck made an abrupt turn to the left, entering the lane of travel in which appellants were approaching. Immediately, the vehicles collided in the eastbound lane, the left front portion of the truck striking the same part of the Wilson car.

Appellants sustained various types of personal injuries, and commenced this action to recover damages therefor. In addition, appellants Wilson sought damages for the loss of their car.

For convenience, we shall hereinafter refer to appellants collectively as though they were one individual, and to respondent Shotwell Company as Shotwell. Since the liability of respondent Young's Lumber Company is predicated solely upon the alleged negligence of its employee Wright (under the doctrine of *respondeat superior*), they shall be referred to as respondent.

In the complaint, appellant alleged that respondent and Shotwell were each negligent in three respects (which will be hereinafter discussed).

Respondent answered, generally denying appellant's averments of negligence, and specifically alleging that the

"collision occurred wholly without fault on . . . [his] part and by reason of the truck . . . striking one of a number of holes . . . breaking the front left spring shackles and disrupting the operating and steering mechanism of said truck, all of which could not have been anticipated or avoided . . . in the exercise of due care."

Shotwell answered separately, generally denying negligence, and alleging that the collision occurred without fault and as a result of an accident which, in the exercise of due care, could not have been avoided.

Appellant replied to each answer, denying the affirmative matters therein contained.

The case was tried to the court, sitting without a jury. At the conclusion of appellant's case in chief, the trial court

sustained Shotwell's challenge to the sufficiency of the evidence, and ordered appellant's action against it dismissed. The trial then proceeded for the reception of respondent's evidence. After the close of all evidence, the trial court rendered a memorandum opinion in which he found in favor of respondent on the issue of negligence. Findings of fact, conclusions of law, and judgment dismissing the action against respondent were entered accordingly.

■ Appellant first assigns error to the trial court's order granting Shotwell's pretrial motion to strike paragraph seven of the complaint on the ground that the matter contained therein was irrelevant and redundant. In that paragraph of the complaint, appellant sought to incorporate, by reference, the written contract (together with its specifications) between the state highway department and Shotwell under which the latter undertook to resurface the part of the highway involved in this case. Since that contract is not a part of the record before us, we cannot determine whether such error, if any, was prejudicial. It is, therefore, impossible for us to pass upon the propriety of the trial court's action in this regard.

■ Error is next assigned to the granting of Shotwell's motion for involuntary nonsuit at the close of appellant's evidence. The correctness of this ruling necessarily depends upon whether appellant presented sufficient evidence to establish a *prima facie* case of negligence on the part of Shotwell in any one of the three respects alleged, and whether such negligence, if any, was a proximate cause of appellant's damage.

■ Appellant first alleged that Shotwell was negligent:

"In failing and neglecting to keep the existing travelled roadway at the point of said collision, and for a considerable distance westerly thereof, in a good condition for traffic . . . that . . . [Shotwell] permitted traffic, travel and transportation over said portion of said highway when the same had in it a number of dangerous chuck-holes, one of which just east of the point of collision, was 23 inches wide, 28 inches long and 2 to 2¼ inches deep, into which . . . Ems W. Wright drove said lumber truck just prior to said collision, losing control over the said vehicle."

In paragraph five of the complaint, appellant alleged that, on the day of the collision, Shotwell was engaged in repairing the highway under a written contract with the state department of highways, which was approved by the director of highways on June 24, 1953. It is further alleged in paragraph six of the complaint:

" 'That the Standard Specifications which were referred to and made a part of said written contract provided, among other things, as follows:

" '7.07 PUBLIC CONVENIENCE AND SAFETY

" 'The Contractor shall at all times conduct the work in such a manner as will obstruct and inconvenience traffic as little as possible. Existing traveled roads adjacent to or within the limits of the improvement shall at all times be kept open to, and in good condition for, traffic by the Contractor. . . .' "

Shotwell admitted these allegations in its answer.

The only evidence offered by appellant was that the highway contained a multitude of chuckholes in the vicinity of the collision. From Shotwell's admission that the allegations contained in paragraphs five and six of the complaint were true, and the undisputed presence of numerous chuckholes, appellant argues in his brief that:

"It is also undisputed that although approximately one year had elapsed since Shotwell had commenced this highway improvement project, it had made no attempt whatever to fill or repair any of these chuck-holes in the highway in this area, although, of course, this could readily have been done."

But this conclusion is neither supported by the admissions made by Shotwell nor by appellant's proof. Shotwell merely admitted:

"That on May 25th, 1954 . . . [Shotwell] was engaged in repairing a portion of Primary State Highway No. 5 . . . under a written contract with the Department of Highways . . . approved by the Director of Highways on June 24th, 1953."

There is no evidence whatever concerning the time within which the contract was to be performed or the date when Shotwell was required to, or actually did, commence per-

formance; nor is there evidence that Shotwell was engaged in resurfacing the road at any time prior to May 25, 1954. Hence, even if we assume *arguendo* that it was Shotwell's duty to fill the numerous chuckholes in order to keep the highway "in good condition" for traffic within the contemplation of the above quoted specification 7.07, still Shotwell would be allowed a reasonable time in which to do so. But, under that assumption, the burden of proof would be upon appellant to prove that Shotwell had not performed this duty within a reasonable time. Appellant failed to present any evidence whatever tending to establish such fact.

■ Appellant's second and third averments of Shotwell's negligence are, respectively:

"In failing to warn the users of said highway, particularly these plaintiffs, of the dangerous condition thereof; and

"In failing to erect a barricade or other suitable structure around said chuck-hole to prevent vehicular traffic from encountering the same."

These allegations are not only without evidentiary support, but are practically controverted by the testimony of appellant Forrest L. Wilson on cross-examination:

"Q. You had driven this road before? A. Yes. Q. While it was under construction? A. Yes. Q. *You had made the observation that the road in other parts was worse than where the accident happened? A. Yes, very much so.* Q. The purpose of the construction appeared to be this re-surfacing of the highway? A. Yes. Q. The old oil mat itself was completely exposed? A. To the best I can remember it was. There was a lot of gravel on each side or ballast, or whatever they call it, where the accident happened. Q. The old oil mat was there for use by vehicular travel? A. Yes, it was. Q. You made observation as to signs, did you not? A. There was signs along the road. Q. *There were signs along the road to indicate the road was under construction and men were working, and reduced speed limit signs? A. I don't remember reducing the speed, but 'Road Under Construction 35 Miles Per Hour.' Q. There were enough signs so you would know the road was under construction or any other driver would know the road was under construction? A. Yes. Q. These chuckholes were*

*so frequent it would have been impossible to barricade each chuckhole, would it not? A. Yes."* (Italics ours.)

The trial court did not err in granting Shotwell's motion for nonsuit. Therefore, the judgment dismissing appellant's action against Shotwell (assignment of error No. 9) was properly entered as a matter of course.

Appellant's third assignment of error relates to the reception of certain opinion evidence to which appellant objected on the ground that the witness was not qualified to answer the particular question because he was a metallurgist (who held a master's degree in chemical engineering), rather than an automobile mechanic. The determination as to whether an expert witness possesses the necessary qualifications to testify on a proper subject is within the sound discretion of the trial court. *Knight v. Borgan, ante* p. 219, 324 P. (2d) 797 (1958); *Oyster v. Dye,* 7 Wn. (2d) 674, 110 P. (2d) 863, 133 A. L. R. 720 (1941). We cannot say that the trial court erred in admitting this testimony in view of the qualifications of the witness disclosed by the record, particularly where, as here, the case is tried to the court.

In his tenth assignment of error, appellant contends that the court erred in sustaining respondent's objection to the following question asked upon direct examination of the state patrolman who investigated the accident after it had occurred:

"Q. At 30 miles per hour, having in mind the condition of the highway there, the type of vehicle No. 2 was, and the chuckholes you have described, would you say under those circumstances a speed of 30 to 35 miles per hour was a reasonably safe speed?"

This question clearly called for an answer which was beyond the issues framed by the pleadings. Appellant alleged in his complaint that respondent was negligent

"In operating said lumber truck at a high, dangerous and unlawful speed under the circumstances, taking into account the condition of said roadway and the weight and load of said truck, *to wit, at a speed in excess of 35 miles per hour.*" (Italics ours.)

We do not know the particular ground of the court's ruling, but the question called for an answer regarding an immaterial matter. The trial court properly sustained respondent's objection. No offer of proof was made by appellant.

█ The testimony concerning the speed of respondent's truck just prior to the collision ranged from twenty-five to thirty-five miles per hour. The trial court found that the truck was traveling between thirty and thirty-five miles per hour, thus within the lawful speed. This finding will not be disturbed. *Winkenwerder v. Knox*, 51 Wn. (2d) 582, 320 P. (2d) 304 (1958).

█ Appellant averred that respondent was negligent in two other respects: first, in failing to yield the right of way to appellant; and second, in failing to keep his lumber truck under control.

The trial court, in its memorandum opinion, applied the law to the facts as he found them to be, as follows:

"In view of the fact that the accident occurred on plaintiffs' side of the road, there is a presumption of negligence or a prima facie case of negligence, and in order to escape liability the defendant must produce evidence showing that he was on the wrong side of the road without any negligence on his part. [See *Zahler v. Dittmer*, 50 Wn. (2d) 32, 308 P. (2d) 689 (1957), and cases cited therein; *Coerver v. Haab*, 23 Wn. (2d) 481, 161 P. (2d) 194 (1945).] It is the defendant's contention that the accident was unavoidable because of a latent defect in his truck of which he had no knowledge and which could not have reasonably been observed upon inspection. The evidence shows and the court finds that there was a latent defect and that when the truck hit the hole in question, it gave enough energy to cause the break and in turn would cramp the wheel sharply to the left, and that the immediate turn of the wheels caused the skidding in question.

"Mr. Charles Smith of Seattle, a chemical engineer of many years' practice, testified in detail with reference to this defect and what would result under the conditions testified to in this case, and the court is compelled to accept his testimony. The court is constrained to the view that the accident would not have happened but for the defect in question. The court also finds from the evidence that the latent defect was undiscoverable by reasonable inspection.

[The defect referred to was a metal fatigue crack in the steel of the main leaf of the left front truck spring. The crack, which was of a progressively expanding nature, extended approximately four fifths of the distance across the main leaf near the forward eye of the spring. It was theorized that a complete separation occurred when the truck struck the chuckhole, causing the left wheel to shift backward and turn sharply, thus causing respondent to lose control. At the time of striking the chuckhole, or immediately prior to the collision, or as a result of it, the rear spring shackle of the left front spring also broke, as did the front main spring leaf of the right front spring.]

"In the case of Robbins vs. Hansen, 184 Wash. 677, the Supreme Court enunciated the rule that the owner of an automobile could not be held responsible for a latent defect. However, it is contended on the part of plaintiffs that the defendant was negligent in not attempting to avoid the chuckhole, in not curtailing his speed, and in hitting the chuckhole in question. It is their contention that a prudent man of the experience of the driver of defendant's truck would not have maintained his speed; that he would have slowed down and that he would have avoided the chuckhole. In this connection the court calls attention to the fact that for miles the driver of defendant's truck had been hitting chuckholes without any untoward events at all; in fact he had been negotiating chuckholes much larger than the one in question.

"The court was invited to inspect the truck and although there is no evidence in the record as to the size of the tires, the court observed that the front tires were very large and it is forced to the view that a truck with such a large tire could normally travel over a 2″ chuckhole without any effect upon the driving mechanism. It is the court's view that a reasonably prudent driver of a truck would not hesitate to drive over a chuckhole of the dimensions of the one involved, especially in view of the presence of the gravel or rock on his right which extended into the highway, having in mind at all times that the road in question was covered with chuckholes."

We are in accord with the application of the law made to the facts as the trial court found them to be in this case.

Appellant's remaining assignments of error are directed to findings of fact, conclusions of law, and the judgment of dismissal, entered in substantial accordance with the

court's memorandum opinion. The evidence does not preponderate against these findings, hence they will not be disturbed. *Winkenwerder v. Knox, supra.* The conclusions of law and judgment flow naturally from the. facts found, and likewise will not be disturbed.

Affirmed.

HILL, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.

November 6, 1958. Petition for rehearing denied.

