[No. 36316.   Department Two.   July 25, 1963.]

Roy E. Rice *et al., Respondents,* v. Ralph G. Johnson *et al., Appellants.*\*

*Norman R. Nashem, Jr.,* for appellants.

*Gavin, Robinson, Kendrick & Redman* and *William H. Mays,* for respondents.

Finley, J.—Mr. and Mrs. Rice (plaintiffs-respondents) took a vacation trip in September 1959 for the duration of the Labor Day weekend, leaving unoccupied their recently constructed home located near Yakima, Washington. Upon their return, they found that a chrome-copper water pipe or tubing, fastened at one end to a water pipe stub on the floor, had become disengaged from the kitchen sink hot water faucet. Escaping water had covered the main floor of the house to a depth of about one-fourth inch, and had drained into the basement, where it accumulated to a depth of approximately twenty-eight inches. Considerable damage resulted respecting the furnishings and the interior of the house.

Plaintiffs instituted suit against the defendants (d/b/a Valley Plumbing & Heating Company), alleging negligent or faulty workmanship relative to the installation of the

\*Reported in 384 P. (2d) 383.

chrome-copper tubing and its connection with the kitchen sink hot water faucet. The defendants had contracted only for the plumbing finish work. The "roughed-in" plumbing had been previously installed by another contractor. The particular plumbing work involved in this controversy was performed by the defendants' workmen during April 1959. The material used in this plumbing finish work was supplied by the plaintiffs.

The trial court sustained the plaintiffs' claim, and awarded damages. Now, on appeal, the appellants-defendants have assigned error to the following finding of fact by the trial court:

"That the separation of the hot water chrome tubing from its connection in plaintiff's home was not due to any excessive pressure and or sudden fluctuation of pressure in the Nob Hill Water System mains nor was it due to the lack of a pressure reduction valve or the lack of a temperature and pressure relief valve on plaintiff's intake line and hot-water tank respectively but rather was specifically caused either by the chrome copper tubing having been cut too short or said tubing not having been inserted into the seat of the faucet as far as it should have been or a combination of both deficiencies."

■ In this case the pertinent factual or evidentiary conflict is a closely balanced one—so much so that, if we were functioning as the trier of the facts of first instance, we might well have reached different conclusions from those made by the trial judge respecting fault, causation and liability. However, it is not our function to retry disputes of fact de novo, but rather to determine whether from the evidentiary pattern reflected by the record it can be said by this court that it substantially supports the factual evaluations of the trial court. *Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn. (2d) 570, 343 P. (2d) 183.

The appellants contend that they are not liable because there is evidence in the record indicating that the hot water tank "ran away" and overheated, thus generating steam and creating excessive pressure, causing the separation at the kitchen hot water faucet. While it is true that there is *some* evidence tending to support the appel-

lants' factual contention, it is equally true that there is sufficient evidence negating their contention to justify the trial court in entering the negative portion of the disputed finding of fact, quoted above in full.

The affirmative portion of this disputed finding of fact reads:

"That the separation of the hot water chrome tubing from its connection . . . was specifically caused *either* by the chrome copper tubing having been cut too short *or* said tubing not having been inserted into the seat of the faucet as far as it should have been *or* a combination of both deficiencies." (Italics ours.)

The evidence shows that a slip-nut connection is a standard and acceptable plumbing device designed for holding chrome-copper tubing in place. The tubing in question was inserted into the faucet pipe, and a nut slipped over the tubing was tightened onto the threaded bottom of the faucet pipe. As the nut was tightened, it compressed a rubber gasket into the space between the outside of the tubing and the inside of the faucet pipe. The evidence clearly indicates this connection was properly tightened, and that the tubing was inserted far enough to have permitted the securing of a proper grip by the rubbet gasket and slip-nut. On the basis of that evidence, the appellants contend that, since the tubing was inserted far enough for the rubber gasket to obtain an adequate grip, any additional insertion would have been superfluous.

We find the trial judge's rejection of that contention is supported by the following testimony and evidence in this case. An expert witness testified that the tubing was only inserted a mere five-eighths of an inch into the faucet pipe; whereas, it was possible to insert it a full one and one-half inches. Testimony also indicated that hot water tends to make the rubber gasket slippery and thus renders the tubing more susceptible to slipping out of the connection. Witnesses stated that (1) the water pressure exerted by water surges, which occur as the water is turned off and on, (2) water hammers, which are caused by air pockets in the water pipes, and (3) simply the hitting of the tubing

by any object, are some of the forces which are responsible for the tendency of the tubing to "inch" out of the connection. In light of the evidence relating to the tendency of the tubing to "inch" from the grasp of the connection, and the slipperiness of the rubber gasket, it appears that the trial court viewed the extent to which the tubing was inserted as constituting a "margin of safety." That is, the greater the distance the tubing would have to slip before becoming disengaged, the less the probability that it would become disengaged from the connection. On the basis of the evidentiary pattern and reasonable inferences therefrom, we affirm the conclusion of the trial judge: that the failure to provide an adequate margin of safety—the failure to insert the tubing as far as possible—was the cause of the separation.

■ The appellants have assigned error to the trial court's permitting James D. Cowan, an architect, to testify as an expert. The contention is that Mr. Cowan is not a licensed plumber and has never done any plumbing personally. We do not feel that it is necessary to discuss this contention for the following reasons:

(1) ". . . The determination as to whether an expert witness possesses the necessary qualifications to testify on a proper subject is within the sound discretion of the trial court. . . ." *Wilson v. Wright* (1958), 52 Wn. (2d) 805, 812, 329 P. (2d) 461.

(2) The trial judge stated, "I'll allow him to testify as an expert, but only give his testimony as much weight as I feel it deserves . . ."

(3) The trial court limited his testimony and refused to permit him to answer a hypothetical question as to the cause of the accident.

It thus seems readily apparent that the trial court did not abuse its discretion in permitting Mr. Cowan to testify, to the extent that he did so testify, in light of his plumbing knowledge derived from his experience as an architect.

It is hereby ordered that the judgment is affirmed.

OTT, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.