[No. 38232. Department One. May 19, 1966.]

NATHAN H. VANGEMERT, *Respondent*, v. OLEN MCCALMON et al., *Appellants.**

*Reported in 414 P.2d 617.

*Julian C. Dewell* (of *Anderson & Hunter*), for appellants.

*Ray M. Dunlap* (of *Powell, Livengood, Dunlap & Silvernale*), for respondent.

HILL, J.—This is a highway collision case; the colliding vehicles were both southbound, and the controversy as to liability centers around whether the plaintiff's vehicle was a following car, or an overtaking and passing car.

Plaintiff's version: The testimony of the plaintiff is that he was driving his dump truck south on Highway No. 99; that there were two lanes for southbound traffic; and that he was driving in the outside, or curb, lane traveling at about 40 miles per hour. When he first noticed a 60-foot tractor

and trailer combination[1], it was proceeding slowly in the outside lane some distance ahead of him. However, its speed increased and it pulled over into the inside lane. When the plaintiff in the outside lane was within 50 to 100 feet of the tractor-trailer combination, in the inside lane, defendant Ellis, suddenly and without warning, commenced a right turn off the highway and completely blocked the outside lane in which the plaintiff was driving. The plaintiff applied his brakes and attempted to swing left, but the vehicles collided. (The point of collision seems to be definitely established within the inside lane.)

Defendants' version: The defendant Ellis testified that he had stopped the tractor-trailer combination off the highway at the office of the wrecking company by whom he was employed. He then started to move the tractor-trailer into the firm's wrecking yard, which involved traveling only about 50 to 70 yards further south on the highway. He testified that he was driving at all times in the outer lane, and that he had moved only a foot or two across the line between the two lanes to secure the necessary room to make a right-hand turn off the highway into the wrecking yard; and that he had signaled his intention to make this turn and had started the turn before the plaintiff's dump truck hit the trailer.

The jury resolved the factual conflict in favor of the plaintiff and brought in a verdict for $5,750.

There was an unquestioned total of $344.28 for doctors, medicines and X rays. The plaintiff's dump truck was valued at between $1,200 and $1,300 with a salvage value of only $150, making a loss of between $1,050 and $1,150. The plaintiff was unable to return to work from the date of the collision, October 18, 1963, to January 21, 1964, and unable to work full time for several months after that date. Another man was paid $1,500 to do the work he would have done. On the issue of pain and suffering, the evidence was

---

[1]The tractor and trailer combination belonged to the defendants Olen McCalmon and wife, and it was being driven by the defendant Robert D. Ellis, whose wife was also joined as a party defendant; however, we will refer to Ellis and McCalmon as though they were the sole defendants.

that following the collision the plaintiff complained of a burning sensation on the right side of his hip. There were numerous abrasions and the skin had been torn off of his knee when it was twisted up over the dashboard at the time of the impact.

His physician testified that when he first examined plaintiff, shortly after the accident, his symptoms were "pain in his right knee, bruised areas over his right thigh, right side of his pelvis, his chest was tender and painful." He was suffering from headaches and there was tenderness over the left elbow and the entire length of the spine. Plaintiff was in a walking cast from his toes to his thigh for about 6 weeks. With respect to his knee, the doctor testified: there was "a ligamentous sprain or torn ligaments of two ligaments, the medial, or the inner ligament, and the anterior cruciate ligament, in other words, two separating ligaments."

These injuries allowed the knee to buckle and caused pain. Injections were administered in the knee but were discontinued at plaintiff's request because of the pain they caused. It cannot be seriously disputed that plaintiff suffered severe injuries accompanied by substantial pain.

We have discussed those items of unquestioned damage at some length because it seems to us that when taken into consideration with the time loss and lost earnings hereinafter discussed, the damages awarded were quite meager. Nevertheless the defendants have elected to argue that the trial court erred in including in its damage instruction the element of permanent disability; and erred also in giving an instruction on life expectancy, which had no relevancy unless there was permanent disability. The defendants urge that while the plaintiff may have a knee which will go "out" on him under certain circumstances, the evidence is that this condition can be remedied by (what is to them) a relatively simple operation.

The question of when and under what circumstances a person will be required to undergo an operation to mitigate the extent of or remove the possibility of permanent disability, is discussed at considerable length in the briefs.

■ We prefer to dispose of that question in a case where it has real relevance, which seems to be lacking in the present case. We will assume for present purposes that there was no evidence of permanent disability and that the trial court should not have referred to it in the damage instruction and should not have given the life expectancy instruction. We have frequently held, and we adhere to the view, that instructions should not be given on issues which are not supported by the evidence. This applies also to the elements for which damages are to be allowed. *Pakka v. Fitzpatrick,* 53 Wn.2d 356, 333 P.2d 917 (1959); *Vogreg v. Shepard Ambulance Serv. Inc.,* 47 Wn.2d 659, 289 P.2d 350 (1955); *Nelson v. Fairfield,* 40 Wn.2d 496, 244 P.2d 244 (1952).

■ However, the damages here awarded do not exceed the amount that could properly be awarded for the pain, suffering, temporary disability, property damage, time loss and other elements of damage that are indubitably established. It does not follow that the giving of an instruction referring to permanent disability (assuming there is no evidence thereof) and the supplementary instruction on life expectancy, necessarily constitute such prejudicial error as to warrant the granting of a new trial. See *Morgan v. Bankers Trust Co.,* 63 Wash. 476, 115 Pac. 1047 (1911), and cases cited, *infra.* Unless it can be seriously argued that the giving of the instructions (which should not have been given) had some influence on the verdict, it is merely harmless error. The amount of the verdict in this case does not even suggest that anything was being allowed for permanent disability.

In the early case of *Carroll v. Centralia Water Co.,* 5 Wash. 613, 32 Pac. 609 (1893), we refused to grant a new trial though the trial court had failed to give an instruction to the effect that no punitive damages could be awarded. The reason given was that though the instruction would have been a proper one, there was no reason to believe that any punitive damages had been awarded, as the damages were not excessive under the establishd facts and the properly applicable law. In that case, we said:

This verdict shows on its face that the jury not only comprehended the evidence in the case, but also the law applicable to the assessment of damages. Its language precludes the idea that punitive damages were given, and demonstrates that the jury were not misled by a mistaken view of the law. (p. 619)

In *Perrault v. Emporium Dep't Store Co.*, 83 Wash. 578, 583, 145 Pac. 438 (1915), we said:

There being no serious contention that the damages awarded are excessive, in view of the serious character of the injury and the pain and suffering, loss of time and expense to which the respondent was subjected, the technical error in the instruction, in that it failed to advise the jury that the damages awarded must be no more than compensatory, was clearly immaterial. Demonstrably it had no prejudicial effect.

In *Wisdom v. Morris Hardware Co.*, 151 Wash. 86, 274 Pac. 1050 (1929), damages were asked for injuries to an apple crop caused by the use of a certain spray. Error was claimed because an instruction given covered damage to the trees and the evidence did not establish such damage. This court refused to consider the error because there was no claim that the verdict exceeded the amount of damage to that year's apple crop under the evidence; hence, there was no prejudice.

The case of *American Products Co. v. Villwock*, 7 Wn.2d 246, 109 P.2d 570, 132 A.L.R. 1010, is of particular interest. In that case there had been serious but not permanent injuries, including a concussion of the brain which had been attended by a great deal of pain, hospitalization for 10 days and then a month at home before the injured boy could return to work. The court found the damage awarded was not excessive. After discussing other issues, the court considered the appellant's exception to that part of the instruction on damages, which permitted the jury to consider the permanency, if any, of his injuries "and the pain and suffering, *if any*, which he will with *reasonable certainty* be called upon to endure in the future." It was urged that the evidence disclosed that there was no permanent injury and there would be no pain and suffering in the future. It

was the court's position that the error was harmless because it had already demonstrated in the opinion that the verdict could be sustained on the basis of the damages actually suffered.

In *Boyle v. Lewis,* 30 Wn.2d 665, 681, 193 P.2d 332 (1948), we said:

It seems to us apparent that the jury made no award for any hospital, medical, dental, or nursing expenses to be incurred in the future, and therefore that part of instruction No. 12, "or is reasonably certain to be compelled reasonably and necessarily to incur in the future as a proximate result of this accident," was not prejudicial, even if it be conceded that the testimony did not warrant the giving of an instruction relative to future expense.

Our most recent holding in this area is *Clevenger v. Fonseca,* 55 Wn.2d 25, 345 P.2d 1098 (1959), a rear-end collision case, in which the damages awarded were $27,500. The court said that the extent of the evidence on the issue of mental suffering, anxiety, distress, grief and mortification, did not justify the emphasis placed on this element of damage in the instructions. The court's conclusion was that the erroneous instruction was not prejudicial to the extent of denying the defendant a fair trial, because, in the light of the extent and character of the injuries, the pain, the suffering, and the special damages received, the jury award of $27,500 could readily be sustained. Three judges dissented and would have granted a new trial because of the erroneous instruction, since they were unable to say that the inclusion therein of the items of damage relative to mental pain and suffering did not materially affect the amount of the jury's verdict.

Here we need go no further than to apply the test of the dissenting judges to the present case. Every judge hearing this case is able to say with complete assurance, that the instruction with reference to permanent disability could not have materially affected the amount of the jury's verdict.

We conclude this phase of the case with a statement from an Arkansas case, *Memphis, Dallas & Gulf R.R. v. Steel,* 108 Ark. 14, 23, 156 S.W. 182 (1913). There the objection

was to the submission of the issues of permanent injury and future suffering to the jury, and the court said:

> We think the evidence warranted the submission of these questions to the jury, but as we have said, the amount recovered indicates that nothing was allowed on that account, and their submission was not prejudicial under the facts of this case, because the pain and suffering shown to have been endured would warrant the recovery which was had. *St. Louis, I.M. & S.Ry.Co. v. Hutchinson,* 101 Ark. 434; *Mo. & N.A. Rd. Co. v. Daniels,* 98 Ark. 363.

There is also a claim that the plaintiff was not entitled to recover for "any loss of earnings sustained," because he did not prove that he lost any profits.

This is a non-sequitur. Time loss or loss of earnings are not synonymous with profits. Concededly there was no evidence of lost profits and there was no attempt to prove any. The only instruction as to loss of profits was one requested by the defendants. It should not have been given, but a party cannot request an instruction, and then claim error because it was given. The instruction that the jury could consider the loss of earnings was clearly proper.

The plaintiff testified that for 3 months before he was injured, he had been extremely busy; that both he and his equipment were operating full time. He testified that after the injury there were jobs available to him, but that from October (the time of the injury) until January 21st, when he hired labor to keep his equipment going, the equipment had been in operation very little; and that it was 8½ months after his injury before he was able to work full time. He testified that the man employed to take his place, until he could return to work full time, was paid $1,500.

The very recent case of *Shewry v. Heuer,* 255 Iowa 147, 157, 121 N.W.2d 529 (1963), deals with the matter of proof of the loss of earnings of a self-employed man. The plaintiff in that case was a member of a partnership engaged in fabricating and welding metals. He was injured in an automobile collision. It was held to be error not to submit his claim for loss of earnings to the jury. The court said:

> It is obvious and the authorities agree there is a difference between loss of time or earnings and loss of profits. Earn-

ings are the fruit or award for labor, while profits are the gain from an investment or business after payment of all expenses. [Citing many cases]

In general a plaintiff is entitled to recover for loss of time or earnings as a result of his injuries . . . .

. . . .

There is much evidence plaintiff lost time from his business as a result of his injuries. He was required to offer proof from which the jury might make some reasonable estimate of the fair value of such time. It was incapable of proof with mathematical certainty nor was this required. If plaintiff were a hired hand the loss of his wages could probably be definitely shown. Certainly he should not be denied any recovery for this element merely because he did not work for wages and proof thereof may be more difficult . . . .

. . . . There is undisputed testimony received without objection that the hourly wage at the time of trial of a welder employed by the partnership throughout the period subsequent to the accident was $2.40. It would seem a finding would be justified that the value of plaintiff's time to his business was at least as much as that of an employee who was able to do only part of the work plaintiff was able to do before the accident. We have said "the recognized fact that the earning capacity of a man operating his own business ordinarily is greater than that of an employee in the same line of service should not be overlooked."

We now turn our attention to the claimed errors in the instructions relative to the rights and duties of the two drivers.

Defendants object to the last sentence of instruction No. 5[2] which reads:

However, the following driver is not negligent simply because he collides with the car in front of him.

---

[2]You are instructed that it is the primary duty of the driver approaching from the rear to avoid a collision, and, in absence of an emergency or unusual conditions, the driver to the rear is negligent if he runs into the car ahead of him. The driver to the rear is not necessarily excused even in the event of an emergency, for it is his duty to keep such lookout and observation of the vehicle ahead, so that he can stop his vehicle without collision. However, the following driver is not negligent simply because he collides with a vehicle in front of him.

■■ The sentence in question might well have been omitted. We do not commend it but feel that under the circumstances of this case it was not prejudicial error to give it. The statement is taken from the recent case of *James v. Niebuhr*, 63 Wn.2d 800, 389 P.2d 287 (1964), but it is no part of an instruction in that case. All statements made by this court are not intended to be incorporated into jury instructions.

It is urged that even if the court's instruction on following vehicles was correct (see n. 2), the defendants were entitled to an instruction in the statutory language. RCW 46.60.080.

■ We disagree. The defendants' theory that the plaintiff's truck was a following car with all of the attendant duties on the driver thereof, was adequately covered in the instruction heretofore quoted in footnote 2. The plaintiff's theory that the dump truck he was driving was an overtaking and passing vehicle was adequately presented by instruction No. 6[3]. Anything further would have been redundant. Defendants contend that instruction No. 6 should have also contained the statutory language of RCW 46.60-.050 (2)[4]. Again we disagree. Other instructions given, which hold each party to a duty of reasonable care, adequately cover the matter. The proposed addition to the instruction merely states the obvious in statutory form.

■ The defendants further urge that their proposed instructions relative to the plaintiff's duty to keep his truck under control and not to collide with other cars, should have been given. This proposed instruction merely pin points (by applying it only to the plaintiff) the general instruction (No. 7) given by the trial court that every person (which includes both the plaintiff and defendant Ellis) driving a vehicle (which includes a dump truck and a trac-

---

[3]You are instructed that the operator of a vehicle may overtake and pass upon the right of another vehicle upon a street or highway with unobstructed pavement not occupied by parked vehicles of sufficient width for two or more lanes of moving vehicles in each direction.

[4]"The operator of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety. In no event shall such movement be made by driving off the pavement or main traveled portion of the roadway."

tor-trailer) upon a public highway in this state shall do so in a careful and prudent manner—and so as not to unduly or unreasonably endanger the life, limb, property, or other rights of any person entitled to the use of such public highways.

The trial court is to be commended rather than criticized for limiting its instructions to general statements of the applicable law. The specific applications can be made by counsel in their arguments.

 The defendants urge that their proposed exculpatory instruction, stating that it was not negligent for defendant Ellis to swing to the left if that was necessary to make his turn to the right and off the highway, should have been given. This was a slanted instruction, which the trial court properly refused.

The trial court, instead, gave an instruction based on RCW 46.60.110, which requires a driver intending to turn right to drive his vehicle as close as practicable to the right-hand edge of the roadway a reasonable distance before the point of making the turn. The question is: How close is practicable? Whether the tractor-trailer was as close as practicable to the right-hand edge of the road when the defendant Ellis made his turn, was properly presented to the jury.

The defendants urge that it was error to give the instruction based on RCW 46.60.120, concerning the distance which a turn signal must be given, *i.e.*, "not less than the last one hundred feet traveled by the vehicle before turning . . . ."

They say that because the plaintiff never saw any signal, the violation of the statute could not be a proximate cause of the accident. Since the plaintiff insisted that no signal was given, it doesn't follow that he would not have seen one, had it been given, and avoided the accident. A failure to give the required signal may well have been the cause of the accident.

It is claimed that the trial court erred in refusing to allow defendants' expert to give his opinion on reaction time and stopping distances. The specific matter in issue was how

much distance was required for the plaintiff to stop his dump truck after he first became aware that the defendant Ellis was turning the tractor-trailer across the highway in front of him.

 It developed that the dump truck was equipped with air brakes; and the expert candidly admitted that he had no experience with air brakes. The trial court deeming him not to be qualified, refused to admit his testimony. We have many times observed that the determination of the qualifications of an expert should be left to the discretion of the trial court; and the ruling of the trial court on the matter of qualifications will not be disturbed except for a manifest abuse of discretion. *Rice v. Johnson,* 62 Wn.2d 591, 384 P.2d 383 (1963); *Wilson v. Wright,* 52 Wn.2d 805, 329 P.2d 461 (1958); *Kelly v. Valley Constr. Co.,* 43 Wn.2d 679, 262 P.2d 970 (1953); *Oyster v. Dye,* 7 Wn.2d 674, 110 P.2d 863, 133 A.L.R. 720 (1941). Upon this record there is no abuse of discretion.

Finding no merit, or at least no prejudicial error in any of the numerous errors urged by the defendants, the judgment appealed from is affirmed.

ROSELLINI, C. J., OTT and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.