[No. 29724.   Department Two.   November 19, 1945.]

JULIUS J. HOLZER, *Appellant*, v. TOMMIE RHODES *et al.*,
*Respondents.*[1]

[1]Reported in 163 P. (2d) 811.

*Royce, Hurley & Roberts,* for appellant.

*Robertson and Smith* and *A. O. Colburn,* for respondents.

GRADY, J.—This action was brought by Julius J. Holzer against Tommie Rhodes and wife and Emmett N. Warren to have the defendants Rhodes declared to be holding title to certain real estate in trust for plaintiff and that they be required to convey title thereto to him and surrender possession thereof; that plaintiff be awarded a judgment against the defendants Rhodes for the value of the use of the property and, in the event title to and possession of the property could not be restored to plaintiff, that he have judgment for its value. The case was tried before the court, and, at the close of the evidence submitted by plaintiff, its sufficiency was challenged. The challenge was sustained and a judgment was entered dismissing the action and quieting the title of the defendants Rhodes to the real estate involved, from

which this appeal has been taken. The defendant Warren did not make any appearance in the lower court and has not appeared in this court.

The substance of the complaint is that prior to May 18, 1943, Warren was the owner of lots 8 and 9 in block 2 of second addition to west Riverside addition to the city of Spokane, and on that date he sold the property at public auction to plaintiff and represented to him that it was free and clear of all encumbrances; that this representation was not true in that taxes thereon were delinquent and proceedings had been instituted to foreclose the tax lien; that all of the defendants knowing of the representations and their falsity and reliance of plaintiff upon them, fraudulently conspired to deprive him of the property and vest title thereto in the defendants Rhodes, and in pursuing their scheme they withheld from him knowledge that taxes were delinquent and proceedings had been instituted to foreclose the tax lien; that defendants intercepted and withheld from plaintiff notice of the delinquency and the institution of the foreclosure proceedings and intercepted mail intended for plaintiff notifying him of such proceedings, and as a result no notice or knowledge thereof reached plaintiff until on or about July 5, 1944.

It is further alleged that a judgment was entered in the foreclosure proceedings in favor of Spokane county and an order of sale was issued about May 31, 1944, and about June 17, 1944, the defendants contrived to have the property offered for sale by Spokane county; that the defendants Rhodes made the only bid at the sale, and the property was sold to them for the amount of the delinquent taxes; that on July 5, 1944, a tax deed was executed and delivered to the defendants Rhodes, and ever since they have deprived plaintiff of the possession of the property.

The answer and counterclaim of defendants Rhodes denied certain allegations of the complaint, admitted others and alleged affirmatively that they were the owners of the property, had made improvements thereon since acquiring title, and asserted an estoppel because of knowledge on the part of the plaintiff of the making of the improvements, and

that plaintiff was guilty of laches. The reply of plaintiff put in issue the affirmative allegations of the answer.

■ The court, having sustained the challenge to the sufficiency of the evidence submitted by appellant, did not make any findings of fact; and, in our review of the factual situation, we must accept the evidence submitted by him as true and accord to him the benefit of all reasonable inferences to be drawn therefrom and interpret it most strongly against respondents and in a light most favorable to appellant. Apply the foregoing rule and test to the record, we develop the following factual situation:

The appellant purchased the property in question from Emmett N. Warren at an auction sale. He was told by the auctioneer that the property was clear of incumbrances. Before the transaction was closed, appellant consulted an attorney other than his present counsel. It does not appear just what he requested his attorney to do in the way of determining the condition of the title. Warren informed him at the attorney's office that all taxes had been paid. Taxes for some years were unpaid and delinquent. Appellant received a quitclaim deed to the property from Warren and was given possession. Warren moved into a small house about six feet distant from the dwelling on the property purchased.

The respondents had been hotel guests of appellant and later became his tenants on this property in the month of March, 1944. They paid monthly rent up to June 1st, but declined to pay the rent becoming due July 1st. On July 5th, respondents informed appellant that the property had been sold for taxes and that they had become the purchasers thereof and for that reason would not pay any more rent.

Shortly after respondents took possession of the property as tenants of appellant, a notice was mailed by the county treasurer of Spokane county addressed to Alta B. Warren, 1420 Water street, Spokane, notifying her that taxes were delinquent and the property would be sold. Mrs. Warren had been the wife of Emmett N. Warren, but was deceased. The property stood on the tax rolls in the name of Emmett

N. Warren, and 1420 Water street was the number and street of the house occupied by respondents.

Respondents did not deliver the notice to Warren. They learned from it that the taxes were delinquent, and the property was subject to sale. The envelope contained the return address of the county treasurer, but it was not returned to him. Sometime after the county treasurer mailed the notice, his deputy called at the property, inquired of Mrs. Rhodes who the owner was, and was informed that she did not know his name but paid rent to a man who ran a hotel in the four hundred block on Main street. She was informed by the officer that there was to be a sale of the property for taxes and was requested to have her husband either so notify the man she mentioned or advise him to go to the treasurer's office. The respondents made no effort to inform appellant as to what they had learned of the taxes being delinquent and of the property about to be sold therefor, but instead Rhodes went to the treasurer's office and inquired as to when a sale would be made.

On June 17, 1944, the property was offered for sale by the county treasurer. The respondents bid the amount of the unpaid taxes and received a treasurer's deed to the property. It does not appear just how long Warren owned the property before he sold it to appellant, and there is no direct evidence that he knew there were any delinquent taxes against the property when he made the sale. He was not available as a witness at the trial. There is no evidence in the record that he conspired with respondents to deprive appellant of the property, or was in any way a party to the plan concocted by respondents by passive conduct to keep appellant in ignorance of the tax sale and to purchase the property for themselves.

█ The first question we must consider is one raised for the first time on this appeal, and it is that appellant became barred from maintaining this action because he did not comply with Rem. Rev. Stat., § 956 [P. P. C. § 59-47], and make a tender of the taxes paid by respondents before commencing suit, and because he failed to allege in his complaint the making of the tender, and that it had been refused. Ordi-

narily we would not consider that type of question at this time, because we have decided many times that questions not raised in the court below will not be considered on appeal. This rule does not apply when the question raised affects the right to maintain the action.

■ However, this is not the kind of an action contemplated by the statute. No attack is being made upon the validity of the tax sale or the deed issued by the county treasurer. The action is based upon the theory that there was such a breach of duty on the part of respondents prior to their purchase of the property that they became trustees for appellant when they acquired title and thereafter held it in trust for him.

Although the action was brought and tried upon the theory of a conspiracy between Warren and respondent and a conspiracy was not proven, nevertheless the questions raised by appellant are before us on this appeal in view of the evidence submitted.

The appellant urges that respondents are estopped to dispute his title under the well-established rule that a tenant is estopped to deny or dispute his landlord's title while in undisturbed possession of the demised premises, and in this connection contends that, as his tenants, they were not permitted by law to acquire a title adverse to him. The latter contention is based upon the theory that respondents, as tenants of appellant, upon learning taxes were delinquent and the property about to be sold therefor, owed him a duty to inform him and did not have the legal right to become purchasers at the tax sale, but having done so, a constructive trust arose.

■ The rule that a tenant is estopped to deny or dispute his landlord's title applies only to the landlord's title as it existed at the time the tenancy began, and does not prohibit the tenant from becoming a purchaser at a sale pursuant to a judgment or decree of a court. *Atwood v. McGrath,* 137 Wash. 400, 242 Pac. 648; *Twardus v. Crewson,* 182 Wash. 522, 47 P. (2d) 829; *Stephens v. Kesselburg,* 19 Wn. (2d) 427, 143 P. (2d) 289. At the time respondents became tenants of appellant, he was the owner of the property occupied by them

by virtue of the deed he had received from Warren. The respondents are not denying or disputing that title. They are claiming title by virtue of their tax deed received from the county treasurer. That title arose subsequent to the title of appellant, and they could assert it without surrendering possession of the premises.

■ Another rule applicable, in view of the nature of this action and the relief sought, is that where the landlord brings a suit against the tenant or counterclaims against the tenant tendering an issue of title and seeks judgment defeating the claimed title of the tenant, or as to any interest in the demised premises greater than necessary to support the tenancy, the doctrine of estoppel against the tenant does not apply even though, in addition, possession of the premises is sought. The rule and the cases in support thereof will be found stated and cited in the annotations in 89 A. L. R. 1295 and 32 Am. Jur. 127, Landlord and Tenant, § 125.

■ There are situations where a tenant will not be permitted to acquire a title adverse to that of the landlord. The courts hold, when considering a tax title acquired by a tenant, that if the tax sale is brought about by the fault or neglect of the tenant, he will not be permitted to take advantage of his own wrong, and adopt the same rule as applies in cases where a vendee agrees to pay taxes or other liens. *Finch v. Noble,* 49 Wash. 578, 96 Pac. 3; *First Nat. Bank v. Mapson,* 181 Wash. 196, 42 P. (2d) 782; *McGuigan v. Simpson,* 197 Wash. 260, 84 P. (2d) 1012; *Stephens v. Kesselburg, supra.* We find the statement made in our cases as well as many others to the effect that, if the tenant or vendee was under any legal or moral obligation to pay the taxes against the premises, he cannot, by neglecting to pay them and allowing the property to be sold in consequence thereof, acquire title thereto.

Based upon the foregoing principles, appellant argues to the effect that, because of a confidential relationship between the respondents and himself, they owed him the duty to have forwarded to him the notice of the county treasurer addressed to Mrs. Warren; also to have informed the deputy treasurer, when he called upon them, of the identity of ap-

pellant and where he could be found, to have apprised him of the information they had received about the delinquent taxes and the impending sale, and to have advised him that the deputy treasurer had requested that he call at his office. It is further contended that appellant had a right to rely upon the landlord-tenant relationship as a protection, and the violation of what appellant contends were the duties and obligations of respondents brought them within the inhibitions of the rule pronounced in the cases last cited. Appellant cites *Brydges v. Millionair Club,* 15 Wn. (2d) 714, 132 P. (2d) 188; *Stephens v. Kesselburg, supra,* and cases from other jurisdictions and other authorities in support of his argument.

Some of the expressions contained in the cases lend support to the application of the principles of law in the manner for which appellant contends, but a critical examination of them discloses either that there was some legal duty or obligation owing by the tenant to the landlord that was violated by the tenant, or that the courts based their conclusions upon ethical considerations rather than any legal or moral obligation as the latter term is generally understood. We have read those cases but cannot accept their ultimate conclusions as applied to the situation before us.

The *Brydges* case is of no aid. It holds that a tenant cannot purchase the undivided interest of one or more of his tenant-in-common landlords and thus escape liability to the others for rent on the theory that he has become a tenant in common with them. In that case we cited and quoted from several cases. The quoted language used by the courts related to the factual situations such cases disclosed and are not applicable here.

In support of the theory advanced that a landlord has the right to rely upon the relation he has with the tenant as a protection, appellant quotes in his brief an excerpt taken from the case of *Bertram v. Cook,* 32 Mich. 518, in which such a statement was made by the court. The "relation" referred to was an agreement on the part of the tenant to pay taxes. The same difficulty arises in the effort of appellant to make use of what was said in the *Stephens* case,

*supra*. That was another case where the occupant of the premises had agreed to pay taxes but let the property go to a tax sale and became the purchaser. In that case, we quoted from *Moss v. Shear*, 25 Cal. 38, to the effect if a tenant is under any legal or *moral* obligation to pay taxes, he could not, by neglecting to pay them and allowing the land to be sold, add to or strengthen his title by purchasing at the sale, or later buying from one who so purchased.

Now, what happened in the *Moss* case was that an occupant of land purchased it at a tax sale and pleaded his title in defense to a suit for possession brought by the one who owned it when he became the occupant. The court found that the defendant was not under any legal obligation to pay the taxes, but did say by way of dictum that if he had been under any "legal or moral obligation" to have paid the taxes he could not acquire a tax title. The court in using the words "moral obligation" did not define what it meant by them.

■ ■ Generally speaking a "moral obligation" is one binding in good conscience and according to natural justice, and one which would be enforcible by law were it not for some positive rule, which, with a view to general benefit, exempts a party from legal liability (27 Words and Phrases 551) and means much more than that which one may expect from another based upon ethical grounds. We find also some courts use the words "confidential" when referring to the landlord-tenant relationship, but such is not its character. *Robinson v. Eagle-Picher Lead Co.*, 132 Kan. 860, 297 Pac. 697, 75 A. L. R. 840; *Maguet v. Frantz*, 95 W. Va. 727, 124 S. E. 117, 37 A. L. R. 1450; 32 Am. Jur. 29, Landlord and Tenant, § 2. Using the foregoing expressions found in the authorities he cites, appellant builds up from them his theory to which we have heretofore referred.

■ In our statement of the facts and the inferences we have drawn, we have gone somewhat further than the trial court did in construing the evidence most strongly against respondents, but, in reaching our conclusions, we must base them upon legal grounds and not moral or ethical ones. One cannot help feeling, under the present state of the record,

that appellant has lost his property under excusable circumstances, and respondents have gained by their unethical conduct; but the difficulty from appellant's standpoint is that, in the first place, the county treasurer was under no obligation to notify property owners that their property was about to be sold for delinquent taxes, and, in the second place, respondents owed appellant no legal duty to forward the treasurer's notice sent to Mrs. Warren, nor to communicate its contents to him, nor to disclose to the county treasurer the name and address of appellant, nor to comply with the request of the deputy treasurer that they notify him the property would be sold for delinquent taxes on a certain date or to advise him to go to the treasurer's office. The record does not show that respondents made any promise to the deputy treasurer that they would comply with his request. As long as their conduct was passive, they incurred no obligation. Under the circumstances, there arose no legal impediment to the purchase of the property by respondents at the tax sale.

The appellant urges that, in any event, he is entitled to a judgment for rental from the time respondents ceased to pay rent until they received their deed. It appears from the record that respondents had the use of some personal property belonging to appellant, but whether the value of its use was included in the agreed rental we cannot say. It further appears that the personal property was in the possession of respondents at the time of the trial. The state of the record is such that we cannot adjudicate those questions on this appeal.

The judgment is affirmed, but the case is remanded to the lower court in order that the questions we have just referred to may be adjudicated.

BEALS, C. J., BLAKE, ROBINSON, and JEFFERS, JJ., concur.