[No. 2731-1.    Division One.    September 8, 1975.]

MATTIE' BALL, ET AL, *Appellants*, v. ROY H. SMITH, ET AL, *Respondents*.

SWANSON, J., dissents by separate opinion.

---

*Edwards & Wetherall* and *Jack E. Wetherall*, for appellants.

*Murray, Dunham & Waitt* and *Wayne Murray*, for respondents.

WALTERSKIRCHEN, J.[*]—This appeal arises from an action to recover damages resulting from personal injuries sustained by Kelly Jefferson, the 7-month-old son of plaintiff Mattie Ball, when a "live" electric plug was placed into the infant's mouth in some unknown manner. Mattie Ball, personally, and as guardian ad litem for her son, appeals from a judgment of dismissal entered on a jury defense verdict in her lawsuit against her landlord Roy H. Smith in which she alleged that her son's injuries were caused by Smith's negligence in making a temporary electrical repair.[1]

For purposes of our discussion, this appeal is presented in the following factual context: During the week prior to Saturday, August 30, 1969, Mattie Ball complained to her landlord Smith that a baseboard electrical outlet in her bedroom was defective. Smith did not send an electrician immediately, but on Saturday he went to the apartment and made a temporary repair. To supply electricity to the defective outlet, he placed a plug at both ends of a 10- to 12-foot-long extension cord, plugged one end into an outlet screwed into an overhead light socket, and plugged the other end into one of the two outlet receptacles in the baseboard, thereby supplying power to the second receptacle. Smith testified that he advised Mrs. Ball to be careful with the temporary repair until the outlet could be fixed permanently. The next day, on Sunday, Kelly Jefferson was discovered lying on the bed in Mrs. Ball's bedroom with the energized plug of the extension cord in his mouth. It is unknown how the cord came to be in the child's

---

[*]Judge F. A. Walterskirchen is serving as a judge pro tempore of the Court of Appeals pursuant to Laws of 1973, ch. 114.

[1]Smith's wife, Patricia K. Smith, is included as a party defendant and is also a respondent herein; however, for convenience, Smith will be referred to as if he were the sole respondent.

mouth. The child suffered severe burns and permanent disfigurement.

In her attack upon the trial court's judgment of dismissal, appellant assigns error to six of the trial court's instructions to the jury. Appellant argues that the thrust of the challenged instructions was to permit the jury to find erroneously that a 7-month-old child can be guilty of contributory negligence. *See Cox v. Hugo*, 52 Wn.2d 815, 329 P.2d 467 (1958). Appellant concedes, however, that trial counsel failed to take exception to any of the trial court's instructions, including those assigned as error, in these words:

The plaintiff has no objections, no exceptions. No exceptions to the Court's, and you gave the instruction we proposed, I believe.

The general rule is that the failure to take exception to a trial court's instructions precludes the review of such instruction on appeal. *O'Brien v. Artz*, 74 Wn.2d 558, 445 P.2d 632 (1968); *Renton v. Scott Pac. Terminal, Inc.*, 9 Wn. App. 364, 512 P.2d 1137 (1973). Nevertheless, appellant contends that we may consider her claim of error, arguing that the rights of a minor child are involved and that the question presented affects her right to maintain her action on behalf of that child. *See Siegler v. Kuhlman*, 81 Wn.2d 448, 502 P.2d 1181 (1972); *Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 465 P.2d 657 (1970); *In re Deming*, 192 Wash. 190, 73 P.2d 764 (1937). We need not resolve this question because we have determined on independent grounds that a new trial is necessary in this case. If error was present in the instructions as given, counsel will have the opportunity to prevent it on retrial. *See Greene v. Rothschild*, 68 Wn.2d 1, 402 P.2d 356 (1965); *Stratton v. Department of Labor & Indus.*, 7 Wn. App. 652, 501 P.2d 1072 (1972).

Appellant's remaining assignment of error is directed to the trial court's rejection of her offer of proof on the issue of negligence per se through the testimony of LeRoy G. Eagon, Chief Electrical Inspector for the City of Seattle, as

to the content and effect of the City's electrical code. During a recess and in the absence of the jury, plaintiff's trial counsel Cyphers advised the court that the electrical inspector would be his next witness, and the following colloquy ensued:

THE COURT: What is your offer of proof? MR. CYPHERS: The offer of proof of this case, it is LeRoy Eagon, he is one of the chiefs of electrical inspectors, that is his title, that he has under his control the records pertaining to an inspection made as a result of a call made by Mrs. Ball on these premises after this accident some time in the forepart of September, as I recall, in 1969. Mr. Watkins, the inspector who made the inspection, is now deceased and, therefore, we are calling Mr. Eagon, because of his death, he will testify that he examined the electrical system, electrical wiring and things at this apartment. THE COURT: Who did, the deceased? MR. CYPHERS: Yes. The records will show that the deceased examined the electrical wiring and such at this apartment three of this apartment house, and that he reported back there were numerous violations of the electrical code of the City of Seattle. He will also testify—this inspector will also testify that the making of this extension cord by two male plugs is a violation of the electrical code of the City of Seattle, the manner in which they were constructed and utilized for the purpose of bringing the extension and plug from the ceiling plug to the wall plug is in violation of the electrical code of the City of Seattle. . . . That is what he can testify to is that it will be a violation. . . . So far as the testimony, your Honor, the testimony of the electrical inspector is concerned, if his testimony is that this cord is put in in this manner is a violation of the code, that is negligence per se. . . . The electrical code, Section 4.100.8, "It shall be unlawful to connect to the electrical current any electrical installations, extensions, into the old electrical equipment until a lawful permit for such work has been obtained and the work inspected and approved." . . . There are other sections the inspector was going to bring with him, too.

Subsequently, the trial court indicated that its ruling would be as follows:

MR. CYPHERS: We have this electrical code problem, your Honor. THE COURT: Right. I have checked it. I picked a

few brains around the courthouse here and there wasn't a single one that said it would be admissible. With the same reasoning you used. Go ahead and make your record. Go ahead and make your offer of proof so that there is no question about it. That all we want to indicate, this is for the record, the judges that I talked to and they have wide trial experience and judicial experience, they have indicated it would be strictly a question of fact for the jury and whether or not the placing of this temporary extension line was negligence, and whether or not, if the jury should find it was negligence, that a reasonable and prudent person wouldn't have acted the same under same or similar circumstances, it would be up to the jury then to determine whether or not that negligence is a proximate cause of injury to Kelly. Mr. Cyphers: Correct, but any indication of the testimony of the electrical code to show the jury whether there was a violation of that electrical code would not be admissible? The Court: That's right, it would not be admissible. If you could show that no extension could be used temporarily in a place that is presently built that isn't under alteration or under new construction, fine, then you would be entitled to bring it in and only [in] that case. Mr. Cyphers: That is where I am relying on the witness.

Thereupon, in the absence of the jury, the witness Eagon was called, and his testimony included the following:

A [Reading] "The purpose of this code is the practical safeguarding of persons and of buildings and their contents from hazards arising from the use of electricity for light, heat, power, radio, signaling and for other purposes." . . . The code doesn't specify or specifically say that two male conductors can be used on either end of the [cord], but the intent is not to permit exposed terminals. And in Section 4.100.15 it says all spliced ends and free ends of conductors shall be covered with insulation equal to that of the conductors. The whole intent is to cover an exposed terminal. Q So that there is no way there can be an exposed terminal which is which we say hot? A Yes, true. Q Again referring to these exhibits and the electrical cord with two male plugs, one plugged into a socket where there is electrical current, would that leave the other end active if it were not inserted in the receptacle? A Yes, it would. Q You consider that in viola-

tion of the various provisions of this code? A Yes, and an evident hazard.

The witness went on to testify as to various other provisions of the code concerning the use of flexible cords and the requirements of permits and inspections relating to certain electrical installations. He indicated that "flexible cords" could not be "longer than six feet except on approved assemblies." From the record, it appears that the witness gave much of his testimony by reading from a copy of the Seattle Electrical Code. The code was not marked as an exhibit or offered in evidence, but no objection was made to the witness' reading from the code as part of the offer of proof. Ultimately, the trial court questioned the witness as follows:

THE COURT: The owner, I think the testimony shows that the owner of the apartment, tried to get an electrician up there but couldn't because it was a Saturday. He promised the tenant that on Monday he would send an electrician around. He said he would rig it up so that she could get power to the wall outlets by running a line from the plug down the wall to the outlet and this is what he attempted to do. THE WITNESS: Yes, I understand it. THE COURT: Now you say as a matter of law anybody who does that is in violation of the code? THE WITNESS: I consider it a hazard. THE COURT: That is different. You consider it a hazard and I do, too, and so does Mr. Cyphers and so does Mr. Murray and there is no question that it was a hazard. But in this case there is an issue of whether it was foreseeable, not because it was installed, but because one end was pulled out of the socket and thrown up on the bed and the child was not electrocuted but seriously injured. The injury in this case is to the child, and the issue in this case is foreseeability. THE WITNESS: Of course, as I say, the code doesn't specifically say you can't put two male ends on a cable, although, you and I know it is hazardous. THE COURT: Good practice dictates against it. THE WITNESS: Yes, and without concealed terminals on the other end — THE COURT: So far as this lash-up is concerned, as long as it was plugged in, plugged in at both ends, there would be no danger of anybody being electrocuted or shocked, would there? THE

WITNESS: That's right, all the terminals were concealed. THE COURT: So it wouldn't be dangerous as long as they were properly connected. It doesn't make any difference, as I see it, whether it was plugged in up above or not as long as it did not come loose. It could have been soldered or fixed and could be run down the wall plug and be plugged into the conduit and as well as the plug outside. You would be in violation there but no danger unless it was pulled out because you would have a cord longer than six feet, it would be permitted under a temporary nature? Is that right? THE WITNESS: It would be permitted under a temporary nature. THE COURT: Yes. THE WITNESS: I mean, not to exceed the six feet. THE COURT: Yes. THE WITNESS: But that wouldn't cause any more of a hazard, I am sure. THE COURT: Whether it was six feet or six inches? THE WITNESS: Yes. MR. CYPHERS: Mr. Eagon — THE COURT: I am ruling it is not admissible. I think there is plenty in the record to show exactly what Mr. Eagon's testimony is.

Respondent asserts that the rejection of the offer of proof was proper because (1) it constituted an attempt to elicit the opinion of the witness Eagon which would invade the province of the jury; and (2) the appellant did not offer the electrical code as an exhibit or propose jury instructions incorporating provisions of it claimed to be applicable to this case. Respondent also argues that the electrical code could not serve as a basis of a claim of negligence absent a showing that the code had the force of law at the time in question. *See Hartman v. Port of Seattle*, 63 Wn.2d 879, 389 P.2d 669 (1964).

■■■ We disagree. The failure of trial counsel to establish that the Seattle Electrical Code is an ordinance having the force of law is not fatal to his offer of proof on the negligence issue in the absence of an objection raised on that basis. No such objection was made here, but if it had been, trial counsel would then have had the opportunity to offer a properly authenticated copy of the code establishing its status. *See Foisy v. Wyman*, 83 Wn.2d 22, 515 P.2d 160 (1973). As to respondent's complaint that appellant's trial counsel failed to offer the electrical code as an exhibit or to

use it as a basis for proposed jury instructions, it is evident that the trial court's ruling on the offer of proof made any such action futile and therefore unnecessary. *See Moe v. Cagle*, 62 Wn.2d 935, 385 P.2d 56 (1963).

■ Moreover, the trial court's rejection of the offer of proof may not be sustained on the basis that the opinion of the witness Eagon would invade the province of the jury. It is apparent that the witness qualified as an appropriate person to give his opinion to the jury as to what would constitute a violation of the electrical code. *See Cramer v. Van Parys*, 7 Wn. App. 584, 500 P.2d 1255 (1972). In *Cramer*, this court approved the testimony of a county building department administrator in which he gave his opinion as to whether the applicable building code had been violated, stating at page 586:

> A further guide to the meaning of the code was offered by the testimony of the administrator for the Snohomish County Building and Plumbing Department whose duties involved the enforcement of the building code in question. It was his opinion that the handrail did not comply with the code provisions in effect at the time of the accident. There was no abuse of discretion by the trial court in admitting this expert testimony. *Nordstrom v. White Metal Rolling & Stamping Corp.*, 75 Wn.2d 629, 453 P.2d 619 (1969); *Palmer v. Massey-Ferguson, Inc.*, 3 Wn. App. 508, 476 P.2d 713 (1970). *Terrace Heights Sewer Dist. v. Young*, 3 Wn. App. 206, 208, 473 P.2d 414 (1970), supports the use of the administrator for this purpose, stating:
>
> > Further, in the construction of statutes and ordinances, as well as resolutions of municipal corporations, the court should give great weight to the contemporaneous construction of an ordinance or resolution by the official charged with its enforcement. *In re Estate of Lloyd*, 53 Wn.2d 196, 332 P.2d 44 (1958).

*See also Gerard v. Peasley*, 66 Wn.2d 449, 403 P.2d 45 (1965); *Gerberg v. Crosby*, 52 Wn.2d 792, 329 P.2d 184 (1958).

Although the trial court has wide discretion in his decision to admit or exclude opinion testimony, *Martin v. Hus-*

*ton*, 11 Wn. App. 294, 522 P.2d 192 (1974), it does not appear from the record here that the trial judge rejected appellant's offer of proof on the basis that it constituted opinion testimony and, therefore, he did not exercise such discretion. Rather, the trial judge apparently determined, based upon his own questioning of the witness, that the use of the 10- to 12-foot-long double-plugged extension cord did not violate the electrical code because the use was only temporary in nature. As indicated by testimony we have quoted previously, the witness had testified that he considered such a use to violate various provisions of the electrical code, and it appears that trial counsel may have sought to clarify the witness' responses to the trial judge's questions:

> THE WITNESS: It would be permitted under a temporary nature. THE COURT: Yes. THE WITNESS: I mean, not to exceed the six feet. THE COURT: Yes. THE WITNESS: But that wouldn't cause any more of a hazard, I am sure. THE COURT: Whether it was six feet or six inches? THE WITNESS: Yes. MR. CYPHERS: Mr. Eagon — THE COURT: I am ruling it is not admissible.

The court's ruling interposed upon counsel is consistent with its earlier pronouncement on the admissibility of testimony concerning the electrical code which, for convenience in reference, we quote again as follows:

> THE COURT: That's right, it would not be admissible. If you could show that no extension could be used *temporarily* in a place that is presently built that isn't under alteration or under new construction, fine, then you would be entitled to bring it in and only [in] that case. MR. CYPHERS: *That is where I am relying on the witness.*

(Italics ours.)

In view of the offer of proof testimony of the witness strongly suggesting a violation of the electrical code, and because the court's hypothetical questioning of the witness included facts not in evidence, such as the possibility that the temporarily used extension cord plugs would be securely fastened by solder "[s]o it wouldn't be dangerous as

long as they were properly connected," we believe the record does not show that the witness Eagon would have testified the temporary wiring arrangement was in violation of the electrical code. In addition, counsel was not given the opportunity to clarify this point or to complete his offer of proof as to the content and effect of the Seattle Electrical Code. *See Moe v. Cagle, supra.*

Therefore, the trial court erred in limiting and rejecting the offer of proof. A new trial must be directed.

Judgment is reversed and the case is remanded for a new trial.

WILLIAMS, C.J., concurs.

SWANSON, J. (dissenting)—The trial court's rejection of plaintiff's offer to prove a violation of the City of Seattle's Electrical Code through the opinion testimony of a city electrical inspector is the sole basis for the majority's reversal of the judgment and remand for a new trial. Inspector Eagon's opinion testimony is not admissible to prove negligence—the ultimate fact in controversy. It could only be admissible on the basis that it furnishes a guide to the meaning of the electrical code. Therefore, its only relevance is as an aid to the court in determining whether or not the code was violated and to support an instruction based on the code. We held in *Cramer v. Van Parys*, 7 Wn. App. 584, 500 P.2d 1255 (1972), that it was not an abuse of discretion to admit the opinion testimony of the county building and plumbing administrator, whose duties involved enforcement of a building code, that a certain handrail did not comply with code provisions at the time of the accident. Such testimony was admitted to support a proposed instruction incorporating provisions of the building code.

The admission or rejection of opinion testimony is discretionary with the trial court. I find no abuse of discretion.

Here, the plaintiff neither offered the code into evidence nor proposed an instruction based on the code. An alleged error which was never argued or presented to the trial court cannot be argued for the first time on appeal.

268

Assuming arguendo that it was error to reject the offer of proof, such rejected testimony cannot amount to reversible error unless it prevented the plaintiff from obtaining an instruction based on the code. I fail to see how the plaintiff was prevented by the rejection of such testimony from securing such an instruction if he believed it meritorious. The plaintiff's failure to offer into evidence the electrical code and an instruction based on the code amounts to a waiver of the error now argued on appeal.

I would affirm.

Petition for rehearing denied January 22, 1976.

Appealed to Supreme Court January 27, 1976.