[No. 44092.    En Banc.    November 18, 1976.]

MATTIE BALL, ET AL, *Respondents*, v. ROY H. SMITH, ET AL, *Appellants*.

718

*Murray, Dunham & Waitt* and *Wayne Murray,* for appellants.

*Edwards & Wetherall* and *Jack E. Wetherall,* for respondents.

ROSELLINI, J.—The jury returned a verdict in favor of the respondent landlord in this personal injury action brought by Mattie Ball (who will be referred to herein as the appellant) on behalf of herself individually and as guardian ad litem for her infant son, Kelly Jefferson. The Court of Appeals having reversed the trial court in a 2-to-1 decision *(Ball v. Smith,* 14 Wn. App. 258, 540 P.2d 906 (1975)), we accepted the case for review pursuant to CAROA 50(e).

Viewing the evidence in the light most favorable to the respondent, as we would be required to do if its sufficiency was challenged *(Osborn v. Chapman,* 62 Wn.2d 495, 384 P.2d 117 (1963); *O'Brien v. Artz,* 74 Wn.2d 558, 445 P.2d 632 (1968)), the jury was entitled to find the following. The respondent went to the appellant's apartment on a Saturday, in response to her complaint that an electrical outlet above the baseboard in one of the bedrooms was not functioning. Upon the appellant's demand that the situation be corrected, and assuming that the services of an electrician could not be obtained on a Saturday, the respondent devised a method of conveying the electrical current to the wall outlet through a 10- to 12-foot extension cord attached to the ceiling light outlet, strung over to the wall and

attached to a nail near the top of the window directly above the wall outlet, then dropped down the wall and plugged into one of the two receptacles in the outlet, which was located beside a double bed. In this manner the second receptacle was activated.

The respondent warned the appellant to be careful with the device until a permanent repair could be made. The respondent knew that there was a small child living in the apartment, but did not know that there was an infant, although there was a crib in the room.

Sometime later, the appellant removed the plug from the wall receptacle, thus leaving the live prongs exposed. The following day, she placed her 7-month-old son on the bed within reach of the cord. He was found shortly after with the plug in his mouth. The child suffered severe burns and permanent disfigurement.

The court instructed the jury regarding the respective duties and functions of the court and the jury, the burden of proof, proximate cause, negligence, contributory negligence,[1] duty of care, the presumption that others will use ordinary care, and the fact that contributory negligence of a parent will not bar recovery by a child. Also, appropriate damages instructions were given.

No exceptions were taken to the court's instructions, which included those requested by the appellant, a fact which her trial counsel acknowledged when he advised the court that he had no objections and would take no exceptions.

Upon appeal, represented by different counsel, the appellant argued that the thrust of six of the instructions was to permit the jury to find erroneously that a 7-month-old infant can be guilty of contributory negligence. The Court of Appeals did not find it necessary to pass upon this contention. The two judges who signed the majority opinion said that, inasmuch as a new trial should be granted upon another ground urged by the appellant, if error was present

---

[1] The trial took place prior to the enactment of RCW 4.22.010.

in the instructions given, counsel would have an opportunity to prevent it on retrial.

Since we conclude that the majority was in error in ordering a new trial, we will not comment upon the propriety of this disposition of the contention,[2] but will look to see whether the assignments of error directed to these instructions properly can be considered.

■ Two of the instructions complained of were requested by the appellant. A party may not request an instruction and later complain on appeal that such requested instruction was given. *Vangemert v. McCalmon*, 68 Wn.2d 618, 414 P.2d 617 (1966).

■ It is also the general rule that instructions to which no exceptions are taken become the law of the case and cannot be reviewed on appeal. *O'Brien v. Artz, supra; Adamson v. Traylor*, 60 Wn.2d 332, 373 P.2d 961 (1962). The appellant, however, maintains that it is not necessary to take exceptions in order to allege error if the rights of an infant are involved. It is true that we have held in equitable actions involving the property of infants, that the court will protect those interests even though the infant is represented by a guardian, where manifest error prejudicial to the rights of the infant is present. *In re Ivarsson*, 60 Wn.2d 733, 375 P.2d 509 (1962); *Seattle-First Nat'l Bank v. Crosby*, 42 Wn.2d 234, 254 P.2d 732 (1953), and *In re Deming*, 192 Wash. 190, 73 P.2d 764 (1937). In two of these cases we found a conflict of interest between the guardian and the infant, which discouraged a diligent protection of the infant's rights; and in the third, a declaration of the rights of children whose guardian ad litem had not appealed was necessarily involved in the interpretation of a trust and was found to be appropriate and desirable.

Our attention is drawn to no case in which this principle has been applied in an action at law, where the infant was

---

[2]*See* ROA I-16, providing in part: "In giving its decision, if a new trial is granted, the court may pass upon and determine all the questions of law involved in the cause presented upon such appeal and necessary to the final determination of the cause."

represented by a guardian ad litem and by counsel, and where there was no conflict between the interests of the infant and the guardian, and no reason to fear that the claim of the infant was neglected by its guardian or its counsel. We have said that a consent judgment, compromising a suit on behalf of minors, duly represented by a guardian ad litem, will not be set aside for alleged constructive fraud, since there is no distinction between decrees in favor of adults and minors duly represented. *Burke v. Northern Pac. Ry.*, 86 Wash. 37, 149 P. 335 (1915). We said there that it was to be presumed that the trial court, as well as the guardian, protected the interest of the minors and further, that the judgment would not be set aside except upon a showing of fraud or collusion.

We are of the opinion that in a case such as this where property of the infant is not involved and there appears to have been no motive to neglect his cause, the ordinary rules of procedure should apply, in the absence of a showing of manifest error, prejudicial to the interests of the infant.

Here, it is not claimed that the instructions to which error is assigned were erroneous statements of the applicable law, but rather that they were not so phrased as to make it clear to the jury that a 7-month-old infant could not be guilty of contributory negligence. While the concept that an infant of 7 months cannot be guilty of contributory negligence might have been further clarified, had appropriate instructions been requested, we find it improbable that the jury could have been misled. It would be unreasonable to assume that any jury would understand an instruction defining reasonable care to be applicable to a 7-month-old infant. Furthermore, there was no contention on the part of the respondent that the accident was caused by negligence of the baby. On the other hand, it was the appellant's theory that the infant pulled the cord from the wall outlet, a theory that she could scarcely have been expected to adopt if she thought it would lead the jury to believe that the infant was guilty of contributory negligence in so

doing. We find no reasonable basis in the record to suppose that the jury may have based its verdict on a finding that the accident was caused in part by contributory negligence of the infant.

No exceptions having been taken to the instructions and no manifest error, prejudicial to the rights of the infant, appearing, we will not look further into the assignments directed to the giving of instructions.

The remaining contention of the appellant and the one upon which a majority of the Court of Appeals thought a new trial should be ordered, concerns the rejection by the trial court of certain testimony which she proposed for the purpose of showing that the respondent was guilty of negligence per se.

While the appellant had not pleaded a violation of the Electrical Code of the City of Seattle (ordinance No. 4.100 et seq.),[3] did not offer the code or any part of it in evidence, and did not request any instruction embodying any of its provisions, she offered the testimony of the city's chief electrical inspector to prove that the device concocted by the respondent was in violation of that code.

The witness revealed that the opinion which he would give—that the device created by the respondent was in violation of the ordinance—would be based upon the fact that it presented the same kind of hazard which the ordinance was designed to prevent, although he admitted that it was not expressly prohibited.

It is the established and unquestioned rule that it is in the province of the court, and not the jury, to interpret a statute or ordinance and to determine whether it applies to the conduct of a party. *Kness v. Truck Trailer Equip. Co.*, 81 Wn.2d 251, 501 P.2d 285 (1972); *Wells v. Vancouver*, 77 Wn.2d 800, 467 P.2d 292 (1970). It is accordingly the general rule that a witness is not permitted to give his opinion

---

[3]CR 9(i) provides:

"In pleading any ordinance of a city or town in this state it shall be sufficient to state the title of such ordinance and the date of its passage, whereupon the court shall take judicial notice of the existence of such ordinance and the tenor and effect thereof."

on a question of domestic law or upon matters which involve questions of law. *Valley Land Office, Inc. v. O'Grady,* 72 Wn.2d 247, 432 P.2d 850 (1967); *Seattle v. Erickson,* 99 Wash. 543, 169 P. 985 (1918); 31 Am. Jur. 2d *Expert and Opinion Evidence* § 69 (1967); 7 J. Wigmore, *Wigmore on Evidence* § 1952 (3d ed. 1940). As was said in *State v. Ballard,* 394 S.W.2d 336 (Mo. 1965), one of the cornerstones of our system of jurisprudence is that questions of fact are to be determined by a jury, and that all matters of law are to be determined and declared by the court.

The applicability of the Seattle Electrical Code, a duly enacted ordinance of the city, was a matter to be determined by the trial court. That court was not satisfied that it included the respondent's action within its scope. The court's questioning of the proposed witness clearly revealed that it was willing to change its interpretation if provisions were cited to it which would show that temporary repairs were covered. None was cited; and, in fact, the witness admitted that the court's interpretation was probably correct.

While we are not called upon to inquire into the correctness of the trial court's interpretation in this action, it not being contended that the court erroneously refused to admit the code or any of its provisions in evidence or to instruct the jury with respect to it, we note in passing that some support for the trial court's view can be found in 14 Am. Jur. *Proof of Facts* 693 (1964), which indicates that municipal electrical codes, patterned after the National Electrical Code as this one is, generally apply to buildings under construction or repair and cover "design and installation practices."

■ In interpreting a statute or ordinance, of course, the court should give great weight to contemporaneous construction placed upon it by officials charged with its enforcement, particularly where that construction has been accompanied by silent acquiescence of the legislative body over a long period of time. *Morin v. Johnson,* 49 Wn.2d 275, 300 P.2d 569 (1956). The ordinance involved here provides

that it shall be interpreted by the building superintendent, from whose decisions appeals can be taken to the Board of Appeals. Ordinance No. 4.100.20. The appellant did not offer to show how these persons had interpreted the ordinance in practice, but offered only the personal opinion of one employee as to its meaning. It is true that the inspector is authorized to give information to contractors, owners, or users about the meaning of the code (under ordinance No. 4.100.2(c)) but he is not authorized to interpret it. Thus the testimony of this witness would have been of no substantial value to the court had the code been offered and instructions requested, and had the testimony been offered for the legitimate purpose of aiding the court in its interpretation of the ordinance.

The Court of Appeals cited *Cramer v. Van Parys*, 7 Wn. App. 584, 500 P.2d 1255 (1972), in support of its conclusion that the testimony was admissible. In that case the superior court had given instructions embodying provisions of the Snohomish County Building Code, and it was contended on appeal that the code had been misinterpreted by the court below. In the course of construing the ordinance, the court noted that the administrator for the Snohomish County Building and Plumbing Department, whose duties involved the enforcement of the building code in question, was permitted to give his opinion that a handrail provided by the defendant did not comply with the code provisions. The court approved the admission of this evidence, citing *Nordstrom v. White Metal Rolling & Stamping Corp.*, 75 Wn.2d 629, 453 P.2d 619 (1969), a case dealing with the admissibility of safety codes not having the force of law, a violation of which does not constitute negligence per se. No notice was taken of the fact that this witness was permitted to give his opinion on a question of law, and that the legal question was thus submitted to the jury.

In addition, the court in *Cramer v. Van Parys, supra,* cited the familiar rule of statutory construction regarding the weight to be given to contemporaneous administrative construction, but again did not take notice of the fact that

this rule pertains to evidence which is placed before the court to aid in its interpretation, not evidence which is presented to the jury to aid it in its factual determination.

Since the Court of Appeals in *Cramer v. Van Parys,* *supra,* did not have before it the principles which govern our decision here, it is not persuasive authority for the proposition that the interpretation of statutes or ordinances is a matter for the jury to determine with the aid of expert witnesses.

The trial court properly refused to allow the chief electrical inspector to testify concerning his opinion of the applicable law. Aside from that opinion, the testimony of this witness would have been that the device set up by the respondent constituted a hazard. As the judge remarked in deciding that he would not permit this testimony, there was no question but that the device was hazardous. Even the respondent, in testifying that he had warned the appellant to be careful with it, admitted its hazardous nature, which was a matter easily within the common understanding of man. The witness' opinion on this matter would have been superfluous. The questions for the jury were, In creating this hazard did the respondent breach a duty owed to the appellant and/or the infant? and, Was his action the proximate cause of the accident? The verdict of the jury reflects a negative finding on one or both of these issues.

█ The trial court has a broad discretion in ruling on the qualifications and the admission of testimony of an expert witness. If the matter is within the ordinary cognizance and needs no expert testimony as an aid to understanding, the court may exclude it. *Swartley v. Seattle School Dist. 1,* 70 Wn.2d 17, 421 P.2d 1009 (1966); 2 S. Gard, *Jones on Evidence* § 14:9 (6th ed. 1972). *See* Annot., *Opinion Evidence—Safety,* 62 A.L.R.2d 1430 (1958).

We do not mean to suggest that expert testimony is never admissible to show a violation of an ordinance or statute. It may be in a given case that the facts are so technical in nature that expert testimony is necessary. *Wells v. Vancouver,* 77 Wn.2d 800, 467 P.2d 292 (1970), was

a case where such expert testimony was admitted. There the question was whether the City of Vancouver building code was intended to protect persons in the plaintiff's situation, and whether the building in question was in compliance with the code. There was no question that the code applied to the building, and the court decided the legal question regarding the scope of its protection. Expert testimony was needed, however, to establish the wind resistance factor of the structure, to show whether or not the building was in compliance with the code. Because there was a question of fact before the jury outside the ordinary cognizance, expert testimony was admissible. This question was not discussed in the case, but we cite it as an example of a case in which expert testimony concerning the violation of a statute or ordinance has a proper place. *See also Foisy v. Wyman*, 83 Wn.2d 22, 515 P.2d 160 (1973), where testimony regarding housing code violations was held admissible to show the condition of the premises in an unlawful detainer action.

In the case before us, there was no factual dispute concerning the nature of the device set up by the respondent or its inherent hazards. Had the electrical code been pleaded or offered in evidence, and had the trial court determined, upon the issue having thus been properly injected, that it applied to the respondent's conduct and met the tests set forth in *Kness v. Truck Trailer Equip. Co.*, 81 Wn.2d 251, 501 P.2d 285 (1972), no expert testimony would have been needed to show a violation. In accordance with the principle laid down in that case, upon the admitted facts, the court would have been called upon to instruct the jury that the respondent was guilty of negligence per se, with only the questions of proximate cause and contributory negligence of the plaintiff mother being left for jury determination. But the question whether this device was forbidden by the ordinance was one upon which the court was never asked to rule. The only question submitted to it was whether it would permit an electrical expert to inter-

pret the ordinance for the benefit of the jury. This it correctly refused to do.

The decision of the Court of Appeals is reversed and the judgment on the verdict is affirmed.

STAFFORD, C.J., and HAMILTON, WRIGHT, and BRACHTENBACH, JJ., concur.

DOLLIVER, J. (dissenting)—We have before us a situation in which a minor's cause of action has been severely damaged by erroneous, or at best ambiguous, jury instructions.

The last paragraph of instruction No. 1 advises the jury that:

> In like manner, the use of the singular of a word may be taken equally to mean the plural.

The jury from that point forward was instructed to consider the word "plaintiff" to mean each of the plaintiffs including plaintiff Kelly Jefferson.

Instruction No. 2 advises the jury of the respective burdens of the plaintiffs and defendants. In pertinent part, it states the defendant has the burden of proving two propositions:

> First, that the plaintiff acted, or failed to act, in one of the ways claimed by the defendant and that in so acting, or failing to act, the plaintiff was negligent;
> Second, that the negligence of the plaintiff was a proximate cause of plaintiff's own injuries and was therefore contributory negligence.

In the final paragraph of instruction No. 2, the court instructs the jury that:

> If you find from your consideration of all the evidence that the plaintiff has sustained plaintiff's burden of proof, and that the defendant has also sustained defendant's burden of proof, your verdict should be for the defendant. If the plaintiff has not sustained plaintiff's burden of proof, your verdict should be for the defendant as to that plaintiff.

Instruction No. 3 defined contributory negligence for the jury as follows:

> Contributory negligence is negligence on the part of a

person claiming injury or damage which is a proximate cause of the injury or damage complained of. Contributory negligence bars recovery on the part of a person suffering injury or damage, even though the opposing party is negligent.

Instruction No. 5, adding to the prejudicial effect, instructs the jury that:

Every person has the right to assume that other persons will use ordinary care, and he has a right to proceed on such assumption until he knows, or in the exercise of ordinary care should know, to the contrary.

At the time of his injury, Kelly Jefferson was 7 months old. As a matter of law, a child of that age cannot be found to be contributorially negligent. *Carraway v. Johnson*, 63 Wn.2d 212, 386 P.2d 420 (1963); *Cox v. Hugo*, 52 Wn.2d 815, 329 P.2d 467 (1958), and cases cited therein. No such instruction was given, none was requested, no exception was taken. To members of the bar, it may be clear that the instructions intended to convey to the jury that the child would be entitled to recover if the existence of a duty on the part of the landlord was established, if the landlord breached that duty, and if the child had been injured as a result of that breach. However, in the context of the previous instruction on contributory negligence and the definition of "plaintiff" as "all parties plaintiff to this suit" the jury could have concluded that the conduct of Kelly Jefferson which contributed to his own injury would bar his recovery. (At the time of the injury, RCW 4.22.010, the comparative negligence statute, had not been enacted.) Such a result is wrong as a matter of law and constitutes a manifest injustice.

Kelly Jefferson has been scarred, disfigured, and disabled for his entire life. His lips will never function properly, and his speech will be affected as a result of his burns. As a minor, he was dependent upon his mother and guardian, Mattie Ball, for her choice of counsel and upon the counsel chosen to represent him competently and upon the court to protect any of the rights he may have had.

The general rule is that the appellate court will not review the appropriateness of instructions on appeal unless exception was taken to the instructions at the time of trial. However, there are long-standing exceptions to this rule. We previously have held that there are exceptions to the general rule in civil cases (*see Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 465 P.2d 657 (1970); *Morrill v. Title Guar. & Sur. Co.*, 94 Wash. 258, 162 P. 360, 163 P. 733 (1917); *Holzer v. Rhodes*, 24 Wn.2d 184, 163 P.2d 811, 172 A.L.R. 1173 (1945); *Wright v. Corbin*, 190 Wash. 260, 67 P.2d 868 (1937); *Siegler v. Kuhlman*, 81 Wn.2d 448, 502 P.2d 1181 (1972)), as well as in criminal cases. *See State v. Peterson*, 73 Wn.2d 303, 438 P.2d 183 (1968); *State v. Case*, 49 Wn.2d 66, 298 P.2d 500 (1956).

In *Siegler v. Kuhlman, supra*, an action was brought by the administratrix of the estate of a 17-year-old girl who was burned to death when her car encountered a large pool of gasoline. The case was argued only on the theories of negligence and res ipsa loquitur. A defense verdict was entered. Strict liability was not raised before the trial court, the Court of Appeals or the Supreme Court, yet this court held that strict liability was applicable in this case and remanded only on the issue of damages. In *Siegler*, as in this case, there was plain error by counsel requiring judicial intervention in order to prevent an injustice.

In *Maynard Inv. Co. v. McCann, supra* at 623, we considered the application of a statute to the case even though the issue was not raised in the trial court. We stated:

> The exception to the rule is a salutary one. Courts are created to ascertain the facts in a controversy and to determine the rights of the parties according to justice. Courts should not be confined by the issues framed or theories advanced by the parties if the parties ignore the mandate of a statute *or an established precedent.* A case brought before this court should be governed by the applicable law even though the attorneys representing the parties are unable or unwilling to argue it.

(Italics mine).

This court has held in the past that the trial court erred

in submitting the question of a minor's capacity and his contributory negligence to the jury. We held that the superior court should have determined, as a matter of law, that a child under six was incapable of contributory negligence. *Von Saxe v. Barnett*, 125 Wash. 639, 217 P. 62 (1923). *Von Saxe* does not reveal whether or not an exception was taken to the submission of the question of contributory negligence to the jury. However, even if a timely exception was made, such gamesmanship should not be the deciding factor in determining whether or not a child recovers for his personal injury.

In *In re Ivarsson*, 60 Wn.2d 733, 737, 375 P.2d 509 (1962), we adopted the rationale of the New Mexico Supreme Court in *Haden v. Eaves*, 55 N.M. 40, 47, 226 P.2d 457 (1950):

> ". . . we fully approve the doctrine that courts of equity should not sit idly by and see guardians lose the estates of their wards through mistakes in judgment or neglect of their duties. We also approve the rule that a minor who has a case in court is represented not only by his guardian ad litem, but by the court itself. A guardian ad litem is an arm of the court whose function is to protect the ward, and a court must not permit its arm to strangle him.
>
> "Here we have a case where the interests of the minor and his father [who was the guardian ad litem] are separable; both have appealed and we see what we believe to be a serious error made in the case against the interests of the minor. We cannot in good conscience sit with folded hands, adopt the attitude of umpires in a contest between adults, apply our ordinary rules of civil procedure and say that because of a mistake of the guardian ad litem in trying the case on an erroneous theory the minor must lose all. . . ."

The majority has distinguished this case from *In re Ivarsson, supra*; *Seattle-First Nat'l Bank v. Crosby*, 42 Wn.2d 234, 254 P.2d 732 (1953); and *In re Deming*, 192 Wash. 190, 73 P.2d 764 (1937), by finding that in this case there is no property right at stake or a showing of manifest error. I disagree on both points. Kelly Jefferson had a chose

in action, a form of property which has long been recognized. *Hawkins v. Front Street Cable Ry.*, 3 Wash. 592, 28 P. 1021 (1892). "Property" is a term of the widest significance and should not receive a literal or technical interpretation. *Labberton v. General Cas. Co. of America*, 53 Wn.2d 180, 332 P.2d 250 (1958); C.J.S. *Property* § 1 (1951). The distinction between this loss of property and the wrongful dissipation of a minor's estate is insignificant in the present context. *In re Ivarsson, supra; In re Deming, supra.* Additionally, I find that a conflict of interest between the guardian and ward (*In re Ivarsson, supra; In re Deming, supra*) or a showing of fraud or collusion (*see Burke v. Northern Pac. Ry.*, 86 Wash. 37, 149 P. 335 (1915) as relied upon by the majority), to be an unnecessary prerequisite to our intervention. This court has both the power and the responsibility to act when to do otherwise would result in a gross injustice to a minor child.

I dissent.

HUNTER, UTTER, and HOROWITZ, JJ., concur with DOLLIVER, J.

Petition for rehearing denied January 13, 1977.